## Case No. 11,860.

### RISON v. CRIBBS.

### [1 Dill. 181.][1]

Circuit Court, E. D. Arkansas.    1870.

RELEASE—WITNESS—PARTY TO SUIT—ESTOPPEL—"CIVIL ACTION"—ACT OF CONGRESS.

1. Since the act of congress of July 2, 1864 (13 Stat. 351, § 3), making parties competent witnesses (however it might have been before), a complainant in chancery who takes the deposition of a respondent, adversely interested, though without a previous order of court specially reserving his rights, does not by operation of law, thereby release the respondent who

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

gives his testimony from the liabilities set up against him in the bill. Nor does the complainant, by such act, estop himself to deny the truth of the evidence given by the respondent.

[Cited in Berry v. Fletcher, Case No. 1,356; Home Ins. Co. v. Stanchfield, Id. 6,660.]

2. The phrase "civil action" in the statute of July 2, 1864, is used in distinction from criminal actions (Green v. U. S., 9 Wall. [76 U. S.] 655), and includes suits in chancery as well as actions at law. Per Miller, J.

[Cited in Smith v. Burnett, 35 N. J. (Eq.) 320; Fenstermacher v. State (Or.) 25 Pac. 143.]

3. Quere: Whether under this act an unwilling party can be compelled to testify, except in cases where before the act he would be bound to do so.

4. This act of congress was designed "to introduce a very important change, amounting to a revolution in the law of evidence, and it is not for the courts to contract the legislative will by distinctions at variance with the general scope of the new principle intended to be established." Per Miller, J., arguendo.

[Appeal from the district court of the United States for the Eastern district of Arkansas.]

The complainant's bill was dismissed, and the assignee appeals. The facts sufficiently appear in the opinion. The third section of the act of congress of July 2, 1864 (13 Stat. 351), which was held to govern the question presented for decision, is in these words: "In the courts of the United States there shall be no exclusion of any witness on account of color, nor in civil actions because he is a party to, or interested in, the issue tried." Amended March 3, 1865 (13 Stat. 533), in particulars not important in the present cause.

Ringo & Yonley, for appellant.
Garland & Nash, for appellee.

MILLER, Circuit Justice. This is an appeal from a decree of the district court, in bankruptcy.

Andrew J. Little having been declared a bankrupt, on the petition of some of his creditors, and Rison appointed assignee, the latter brought suit in chancery against Cribbs and others, to recover a large stock of goods which he claimed to have been fraudulently transferred by the bankrupt to the defendants.

The district court rendered a decree in favor of the assignee against all of the defendants, except Cribbs, and dismissed the bill as to Cribbs. [Case unreported.] From this decree in favor of Cribbs, the assignee has appealed to this court, and I am now called on to review the action of the district court in that matter. The decree from which this appeal is taken, uses this language: "That as to the said defendant, Cullen G. Cribbs, complainant's said bill of complaint be, and the same is hereby dismissed, and that he go hence discharged therefrom without day, said complainant having released and discharged him of all liability in this suit, by taking his deposition without the leave of this court, to

be read as evidence on the trial of this cause, and proved by him as such witness, that his purchase of the goods mentioned in the pleadings was made without any knowledge of the insolvency of his vendor, the said Andrew J. Little, bankrupt, or that he was indebted on account of his purchase of said goods, and that his, Cribbs's, purchase, was made bona fide, and for a valuable consideration, without notice."

I have made a careful examination of all the testimony in the case, and it leaves no doubt that Cribbs did know all about the insolvency of the bankrupt, and took an active part in the effort of the latter to defraud his creditors, with a full knowledge of his purpose in making the sale of his stock of goods. I am therefore satisfied that the district court, in the latter part of the recital, does not mean to say that, in point of moral force, the testimony of Cribbs over-balanced the other evidence, and produced a conviction of his innocence, but its meaning is, that plaintiff having sworn this defendant in his own behalf, is estopped to deny what he says in answer to plaintiff's interrogatories. Yet I can hardly believe that such a proposition, if separately and clearly stated, would have been made the foundation of the decree by the court below, and I suppose it must be taken in its connection with the first proposition on which the decree was founded, and which is mainly relied on in argument here to support it.

That proposition, as I understand it is, that when a complainant in chancery takes the deposition of one of several defendants, to be used on the hearing of the case, the legal effect of that act is, to release the witness from the liability set up against him in the bill, unless there has been a previous order of the court, directing such deposition to be taken, and preserving the substantial rights of the parties against prejudice from that departure from the usual course of chancery practice.

I do not purpose to go into the inquiry whether such was the rule of the English court of chancery unaffected by legislation. The counsel for the appellee has undoubtedly produced authorities which seem to favor that view of the question. But as I think the recent legislation of congress, in regard to the competency of parties to civil actions in the federal courts, must govern the action of the court in this case, it is unnecessary to inquire further into the more ancient doctrine of the chancery practice.

The 3d section of the act of July 2, 1864 (13 Stat. 351), introduces into the federal courts a new and very important rule of evidence. "In the courts of the United States there shall be no exclusion of any witness on account of color, nor in civil actions, because he is a party to, or interested in the issue tried."

The phrase "civil actions" is here used undoubtedly as opposed to criminal actions, and therefore includes suits in chancery as well as suits at law. That the phrase is used in contra-distinction to criminal actions, is held by the supreme court in the case of Green v. U. S., 9 Wall. [76 U. S.] 655.

The reason of this change in the law of evidence is as pertinent to equity as to common law courts, and the terms in which the legislature has expressed its will, leave no ground for excluding it from the one any more than the other. It is also to be considered that the act of 1864 merely introduces into the practice of the federal courts a principle which has been extensively adopted in the states, by state legislatures, in which no such distinction has been made.

In the case before us, the question does not arise, whether a party to a suit can be compelled under this act of congress to testify at the instance of his opponent, when he is otherwise unwilling to do so. In case of the refusal of a party to a suit to testify at the instance of his opponent, it might be a question whether the act of congress is intended to compel him to do so under any other circumstances than where he was bound to testify before the passage of the statute. But in the case before me the defendant when requested to testify, did so voluntarily, and as the act of congress renders him a competent witness by removing all the disability which the common law attached to him as a party to the suit, or by reason of his interest in the event of the suit, it seems to me there remains no ground for holding that he is thereby released from the claim set up against him in the bill. The foundation of the rule in chancery must have been, that as the witness could only become competent by releasing him from all liability, depending on the event of the suit, the law would presume or enforce such release when he was used as a witness against other parties to the suit.

But this objection of interest in the witness is precisely that which is abolished by the act of congress, and therefore no such legal presumption arises, or is necessary to reconcile the use of the testimony with a principle which no longer exists.

It is also obvious that if, as we suppose, the act of congress renders the witness competent, that competency cannot depend upon an order of court, nor can the use of his evidence work a release of the claim which the testimony of the witness is intended to establish. Such conditions annexed to the use of a witness who by the old chancery rule was incompetent, cannot now be imposed on the use of a witness rendered competent by statute.

The act of congress was undoubtedly designed, by those who enacted it, to introduce a very important change amounting to a revolution in the law of evidence, and it is not for the courts to counteract the legislative will by distinctions at variance with the general scope of the new principle intended to be established.

The decree is reversed, and the case remanded to the district court, with directions to render a decree in favor of complainant,

holding Cribbs liable for the fraudulent purchase of the bankrupt's goods. Reversed.

NOTE. That one party to a civil action may compel his adversary to testify, see Berry v. Fletcher [Case No. 1,356]; but that the defendant in a criminal case is not competent to testify in his own behalf, in the federal courts, see U. S. v. Hawthorne [Id. 15,332].