CASE No. 1141.

## McCALL v. COHEN.

1. An order dismissing the complaint, passed at the proper stage of a trial, is not erroneous because that no motion for dismissal was made by defendants.
2. A non-suit should not be granted *in invitum* where there is any evidence to go to the jury; but where, in action for damages for proceedings under a void judgment of a trial justice, there is no evidence that the trial justice acted willfully or corruptly, or that the plaintiffs willfully procured or oppressively enforced the illegal judgment, the complaint was properly dismissed by the order of the judge.
3. The judge of an inferior court is not liable in damages for an injury resulting to a party by reason of an error of judgment committed by such officer in the discharge of his duty, where the subject-matter was within his jurisdiction—except, possibly, upon proof of a willful and corrupt motive.
4. The rule is the same where his error of judgment was as to his jurisdiction of the persons of the defendants, in a case wherein he had undoubted jurisdiction of the subject-matter. The distinction between no jurisdiction and excess of jurisdiction declared in *Bradley* v. *Fisher*, 13 *Wall.* 335, approved.

---

Before PRESSLEY, J., Darlington, April, 1881.

Action commenced in July, 1880, by L. A. McCall against D. D. Cohen and the other parties named in the opinion as defendants, and also against G. W. Brown. The opinion fully states the case.

*Mr. B. O. Townsend,* for appellant.

February 18th, 1882. The opinion of the court was delivered by ·

McGowan, A. J. This was an action to recover damages for a levy on property under a void judgment. The defendant, M. A. Huggins, being a trial justice, rendered, May 29th, 1877, a judgment in favor of Hart & Co.—namely, N. S. Hart, D. D. Cohen, P. Moran, John V. McNamee and McDuff Cohen—against McCall & Co.—namely, Stephen McCall and L. A. McCall. Under the execution issued in the case, a mule, the property of L. A. McCall, was levied on and detained some time. Afterwards the judgment was set aside, and said McCall brought this action for damages against the *trial justice,* who rendered the judgment, and the *creditors, plaintiffs* in that action. When the case was called, it was announced that two of the defendants, D. D. Cohen and John V. McNamee, had not been served, and the plaintiff was allowed to proceed against the other defendants.

It appeared that Hart & Co., merchants of Charleston, sent to R. K. Charles, Esq., an account against McCall & Co. for $14.57, to be collected. Mr. Charles placed the account in the hands of Trial Justice Huggins for suit, and, without further instructions from them, took such steps for the collection as he thought best. Huggins sued on the account. The summons was returned served by one Calvin Josey, acting constable, but who, as it appeared, was not a regular constable, and had no special appointment in the case. When McCall received the summons, and before the day of trial, he enclosed to Huggins the amount of the account, $14.57, without interest or costs. Huggins received the money, but, concluding that there was interest due at twelve per cent. and costs, he credited the amount received and gave judgment for $10, "balance of debt and costs."

Upon this judgment execution was issued, which was taken from the officer sent to levy it. Another execution was issued, whereupon the plaintiff here, McCall, made a motion before the trial justice to set aside the judgment, upon the ground that he had not been made a party by proper process. On that ground the motion was refused, but granted unless the plaintiffs would remit all interest over seven per cent., which was done, and the judgment reduced to $6.93. The execution was then placed in

the hands of the sheriff by Mr. Charles, attorney for Hart & Co., with instructions to notify McCall, his object being, as he testified, "to work him up to a settlement." G. W. Brown, deputy sheriff, levied the execution on a mule belonging to L. A. McCall. The sheriff offered to return the mule, but McCall declined to take him. After some six weeks the mule was returned in bad condition, and soon after died.

L. A. McCall applied for a writ of *certiorari* to set aside the judgment, which Mr. Charles resisted. Judge Wallace, March 12th, 1879, granted the prayer, ordering "that the judgment and execution mentioned in the petition be set aside and canceled, and, also, that Hart & Co. pay the costs of this proceeding, together with $10 costs of this motion." From this order there was an appeal, and this court affirmed the order. *State, ex rel. McCall,* v. *Cohen,* 13 *S. C.* 198.

When the testimony in this case closed, Judge Pressley required argument on the part of the plaintiff as to whether there was any evidence to go to the jury, and, being of opinion there was none, directed Mr. Charles, defendants' attorney, to draw up, for his signature, the following order: "There being no evidence to go to the jury to connect D. D. Cohen, P. Moran, John V. McNamee, N. S. Hart, McDuff Cohen and M. A. Huggins with the trespass set forth in the complaint, it is ordered that as to them the action be dismissed."

The plaintiff appeals from this order upon the following grounds:

1. "Though action had been commenced against the defendants, D. D. Cohen and John V. McNamee, by delivery of the summons to the sheriff for service, yet they, not having been served therewith, were not before the court, and the plaintiff should have been allowed further time to effect service upon them, and the case should only have been heard, and any decision related only to the defendants actually served with the summons.

2. "The order was made on the motion of the court itself.

3. "There was evidence to go to the jury to connect the defendants, known as Hart & Co., with the trespass set forth in the complaint.

4. "There was evidence to go to the jury to connect M. A. Huggins with the trespass set forth in the complaint, and from which they could infer his willful, knowing, malicious and corrupt intention and *animus*.

5. "The order was otherwise erroneous."

No argument was submitted in this court for the respondents, and we have had to make such hasty examination as the press of business would allow. There is nothing in the order having been prepared at the instance of the judge himself. It was not, as in the case of the *State* v. *Parker*, 7 *S. C.* 235, "without notice to the party prejudiced by it," but in the midst of the trial and in the presence of all parties. We consider the matter precisely as if the motion had been made by Mr. Charles, attorney for the defendants. We cannot assume that he was opposed to entering an order in favor of his clients.

The rule certainly is that a non-suit upon the facts should not be granted when there is any evidence to go to the jury, whose exclusive province it is to decide upon the weight of conflicting testimony. As was said in the case of *Redding* v. *South Carolina Railroad Company*, 3 *S. C.* 9, "where there has been a total failure of testimony, as in *Brown* v. *Frost*, 2 *Bay* 126, and *Hopkins* v. *De Graffenreid*, *Id.* 441, there was nothing to leave to the jury, and it was the duty of the judge to non-suit; but, as it is said in *Rodgers* v. *Madden*, 2 *Bail.* 321, the practice of ordering a non-suit *in invitum* for defective testimony is to be pursued with caution." *Holley* v. *Walker*, 7 *S. C.* 144. It is the province of the judge to decide all questions of law, and in this case there was a mixed question of both law and fact.

Trial Justice Huggins was a *judicial officer*, and in the course of his official duties he rendered a judgment which, as it afterwards appeared, was void for the want of proper service of the parties. One of the questions was whether, as *matter of law*, he was responsible for the consequences. Upon that point there can be no doubt. It is as well settled as any legal proposition can be that a judicial officer is not liable in damages for an injury which may come to a party by reason of an error of judgment committed in the discharge of his duty where the subject-matter is within his jurisdiction. Without going into the long list of

authorities in support of this proposition, extending back at least to the time of Lord Coke, it cannot be necessary to do more than refer to the case of *Bradley* v. *Fisher*, 13 *Wall.* 335, decided in the Supreme Court of the United States as late as 1871, in which the subject received exhaustive consideration.

That was an action for damages by Mr. Bradley, a lawyer, against Judge Fisher of the District of Columbia for striking him from the rolls as a practicing attorney. In delivering the judgment of the court, Judge Field said : " The principle which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions obtains in all countries where there is any well-ordered system of jurisprudence. It has been the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in this country. It has, as Chancellor Kent observes, ' a deep root in the common law.' *Yates* v. *Lansing*, 5 *Johns.* 291. Nor can this exemption of the judges from civil liability be affected *by the motives with which their judicial acts are performed.* The purity of their motives cannot in this way be the subject of judicial inquiry. This was adjudged in the case of *Floyd* v. *Barker*, reported by Coke in 1608 (12 *Coke* 25), where it was laid down that the judges of the realm could not be drawn in question for any supposed corruption impeaching the verity of their records, except before the king himself, and it was observed that if they were required to answer otherwise it would ' tend to the scandal and subversion of all justice, and those who are the most sincere would not be free from continual calumniations.' " This is undoubtedly the law in reference to courts having general authority, and it is equally true in respect to judges of inferior courts, except possibly as to the right to call in question the motives with which they act—whether ignorantly or willfully and corruptly.

The case of *Reid* v. *Hood and Burdine*, 2 *N. & McC.* 168, was very analogous to this. That was trespass against Burdine, a justice of the peace, and Hood, the plaintiff in an attachment which the said justice, at his instance, had illegally issued against the plaintiff. In delivering the judgment of the court, Judge Richardson says : " The essential characteristic distinction be-

tween a *judicial* and a *ministerial* officer is that the former is to give judgment, which requires perfect freedom of opinion; but the latter is to execute, which supposes obedience to some mandate prescribing what is to be done, and leaving *nothing* to opinion. Now, as opinion upon any subject is various and uncertain, we cannot direct the judgment, but must leave it to the honest dictates of the officer's peculiar intellect, upon information acquired; and both information and intellect are so different in different men that it is vain to look for the same correctness of adjudication. In all judicial questions, then, the very aim and duty of the officer is to give his true opinion after due inquiry. If erroneous, he can no more answer for the error than for the head which Heaven has given him. All we ask of such an officer is the just picture which has been impressed upon the tablet of his intellect by the facts and the law together; and however discolored and distorted it may come out, yet if it be the true image of his intellectual impression, we get just what we require and all that he can give. Opinion, then, having no fixed test nor measure, no equal scales nor weights, all we can answer for is its honesty."

But it is insisted that this principle shields a judicial officer from pecuniary responsibility *only* when the act complained of is within his jurisdiction, and that he is liable as a trespasser when it is beyond his jurisdiction. It is alleged in this case that the trial justice acted without jurisdiction, and on that ground the judgment was declared void, as shown by the order in the *certiorari* proceedings. *The State ex rel. McCall* v. *Cohen, supra.* It is true it was held in that case " that a judgment" (this very judgment) " rendered by an inferior court against a party not brought within its jurisdiction by proper service of process may be set aside under proceedings by *certiorari;*" but it must not be overlooked that Trial Justice Huggins had jurisdiction of the subject-matter in which he rendered that judgment, although, the parties not being properly before him, it was in fact not a legal judgment. He was not acting beyond his jurisdiction, but he erred in supposing that he had acquired jurisdiction of the persons of the defendants when he had not. Having jurisdiction of the subject-matter, whether he had jurisdiction of the defend-

ants was a matter for his own determination, although he might and did decide that question wrong.

This distinction between excess of jurisdiction and no jurisdiction at all is clearly made in the case already cited of *Bradley* v. *Fisher*. " The distinction here made between acts done in excess of jurisdiction and acts where no jurisdiction whatever over the subject-matter exists was taken by the Court of King's Bench in *Ackerley* v. *Parkinson*. In that case an action was brought against the Vicar-General of the Bishop of Chester and his surrogate, who held the consistorial and episcopal court of the bishop, for excommunicating the plaintiff with the greater excommunication, for contumacy in not taking upon himself the administration of an intestate's effects, to whom the plaintiff was next of kin, the citation issued to him being void, and having been so adjudged. The question presented was whether, under these circumstances, the action would lie. The *citation being void, the plaintiff had not been legally brought before the court, and the subsequent proceedings were set aside on appeal on that ground.* Lord Ellenborough observed that it was his opinion that the action was not maintainable if the ecclesiastical court had a general jurisdiction over the subject-matter, although the citation was a nullity, and said that " no authority had been cited to show that the judge would be liable to an action where he has jurisdiction, but has proceeded erroneously, or, as it is termed, ' *inverso ordine.*' "

Mr. Justice Blanc said there was " a material distinction between a case where a party comes to an erroneous conclusion in a matter over which he has jurisdiction and a case where he acts wholly without jurisdiction ;" and held " that where the subject-matter was within the jurisdiction of the judge, and the conclusion was erroneous, although the party should, by reason of the error, be entitled to have the conclusion set aside and to be restored to his former rights, yet he was not entitled to claim compensation in damages for the injury done by such erroneous conclusion, as if the court had proceeded without any jurisdiction."

We see no evidence in this case that Huggins, the trial justice, acted willfully or corruptly in rendering the judgment. From

the record it appears that the defendants had been served in the usual way, and the illegality of that service having been made by a private person, without special appointment, was not obvious. It is not surprising that the trial justice made the mistake. Indeed, none but a well-informed lawyer would have known that the service was illegal and void. It was not shown that he had anything to do with making the actual levy or detaining the mule. There was nothing tending to connect him with that, except, perhaps, the statement of the deputy sheriff, Brown, that when he was informed of the levy, the morning after it was made, he replied : " All right, go ahead;" and laughed. Huggins denies this, but, if true, it was before the judgment was declared void, and afforded no evidence that in rendering the judgment he had acted willfully and corruptly.

As to the other defendants, members of the firm of Hart & Co., we see no evidence that they did more than creditors are allowed to do in collecting debts, or in any way were to blame. They lived in the city of Charleston, and it does not appear that any one of them was ever in the county of Darlington. In the course of business they sent a small account for collection to their attorney, who, in his efforts to collect it, took such steps as he thought proper. When a *writ of certiorari* was applied for to set aside a judgment he had obtained for his clients, he resisted the application, and, when he failed, they paid the costs as they were required to do. We see in this nothing so unusual or extraordinary as to show upon their part either the willful procurement or oppressive use of an illegal judgment.

The judgment of this court is that the judgment of the Circuit Court be affirmed.

Simpson, C. J., and McIver, A. J., concurred.