The TOWN OF HOPKINS, SOUTH CAROLINA et al., Plaintiffs,

v.

Owens T. COBB, Jr., et al., Defendants.

Civ. A. No. 78–1110.

United States District Court,
D. South Carolina,
Columbia Division.

March 22, 1979.

John R. Harper, II, Columbia, S. C., for plaintiffs.

C. Tolbert Goolsby, Jr., Deputy Atty. Gen., Treva G. Ashworth, Asst. Atty. Gen., James M. Holly, Staff Atty., Columbia, S. C., for Daniel R. McLeod and O. Frank Thornton.

Daniel R. McLeod, Atty. Gen., Victor S. Evans, Deputy Atty. Gen., Katherine W. Hill, Asst. Atty. Gen., Columbia, S. C., for Owens T. Cobb, Jr.

## ORDER

HEMPHILL, District Judge.

This matter is before the Court on a motion to dismiss the claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by the Defendant, the Honorable Owens T. Cobb, Jr., Special Circuit Judge, raising the defense of judicial immunity. The Complaint was filed on July 6, 1978, and brought pursuant to 42 U.S.C., §§ 1971, 1973, 1981 and 1983, alleging violations of the First, Ninth, Thirteenth, Fourteenth and Fifteenth Amendments to the United States Constitution caused by the application by the Defendant of South Carolina law in a case before him.

The Complaint reveals that the matter arises out of a suit in the Richland County Court of Common Pleas in which the Defendant Judge presided in the State court action. The certificate of incorporation of the purported Town of Hopkins was placed in issue. Several of the Plaintiffs in this action were parties in the State court action in which they represented the interests of the Town. The Defendant Judge, on December 6, 1977, entered an order nullifying the Certificate of Incorporation of the Town of Hopkins and ordered that it be surrendered on the basis of a South Carolina statute (*Code of Laws of South Carolina, 1976,* § 5–1–30) that prohibits the incorporation of a town any part of which lies within five miles of the boundaries of another incorporated municipality.[1] The fact that a portion of the Town of Hopkins lay within five miles of the boundaries of the City of Columbia was deemed admitted by the failure of the representative of the Town to respond to a request for admission within the time provided by the South Carolina law. Plaintiffs in this Court now seek to contend that no portion of the proposed town lies within five miles of the City. The representatives of the Town failed to perfect appeal to the South Carolina Supreme Court from the adverse order of the Defendant Judge.

Plaintiffs in this action are the purported Town of Hopkins, the Mayor and members of the Town Council, several of whom were named Defendants in the State court action. They seek an injunction against the Defendant Judge restraining him from enforcing his Order and a declaratory judgment challenging as unconstitutional the State statute under which the certificate was nullified and also alleging that the statute is applied in a racially discriminatory manner. The constitutionality of the State statute and its allegedly discriminatory application were not raised as a defense in the State court proceedings. No allegation is made that the Defendant Judge acted outside his jurisdiction or that his decision was made in bad faith. This Court must conclude that the Plaintiffs seek to collaterally attack the decision of the Defendant Judge by seeking to enjoin him from enforcing his judgment by way of contempt and holds that he is judicially immune from actions seeking to enjoin him from acts which will be taken within his judicial jurisdiction.

■ At common law, judges cannot be sued for acts done or words spoken in their judicial capacity. *Floyd and Barker* (1608) 22 Co.Rep. 23; *Yates v. Lansing,* 5 Johns. 282 (N.Y.Sup. Court of Judicature 1810); *Taafe v. Downs* (1813) reported in *Calder v. Halket,* (1839) 3 Moo. 28, 13 Eng.Rep. 12.

. . . for if the judicial matters of record should be drawn into question, by partial and sinister supposals and averments of offenders or any on their behalf,

---

1. Counsel for the Plaintiffs submitted at the hearing before this Court that Plaintiffs have not complied with the Order of the State court.

there never will be an end of causes but controversies will be infinite  .  .  . *Floyd and Barker, supra,* at 24.  This immunity was designed to protect judges from continuous litigation regarding decisions reached in a judicial capacity and was based on the theory that a judge was answerable only to his Sovereign for his judicial acts and not to any other judge.  Therefore, a judge could not be questioned about his judicial acts by another judge, either at law (for damages) or in equity (for an injunction).  *Heath v. Rydley* (1614) Cro.Jac. 335.  In either case, the proper remedy was by way of writ of error from a superior court.  A judge was not, however, immune from suit by a private party if he failed to perform a ministerial task.  *Ferguson v. Kinnoul (Earl of)* (1842) 9 Cl. and Fin. 251, 8 Eng.Rep. 412;  *Green v. Buccle-churches* (1589) 1 Leon. 323, 74 Eng.Rep. 294.  In failing to perform a ministerial task, the judge acted as an individual and was, therefore, subject to an action at law for damages by the person injured by his failure.

In this country, the common-law doctrine of judicial immunity was first enunciated by Mr. Chief Justice Kent in his scholarly opinion for the New York Supreme Court in the case of *Yates v. Lansing, supra.*  The Supreme Court of the United States, citing *Yates,* adopted and elaborated on the doctrine in the case of *Randall v. Brigham,* 7 Wall. (74 U.S.) 523, 19 L.Ed. 285 (1869).  In that case, an attorney attempted to sue the members of the Superior Court of Massachusetts for removing him from the bar.  Mr. Justice Fields, writing for the Court, stated:

> [Judges of superior or general authority] are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction.  .  .  .  The doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice.  Any other doctrine would necessarily lead to the degradation of the judicial authority and the destruction of its usefulness.  Unless judges, in administering justice, are uninfluenced by considerations personal to

themselves they can afford little protection to the citizen in his person or property.  And uninfluenced by such considerations they cannot be if, whenever they err in judgment as to their jurisdiction upon the nature and extent of which they are constantly required to pass, they may be subjected to prosecution at the instance of every party imagining himself aggrieved, and be called upon in a civil action in another tribunal, and perhaps before an inferior judge, to vindicate their acts.  This exemption from civil actions is for the sake of the public, and not merely for the protection of the judge.  And it has been maintained by a uniform course of decisions in England for centuries and in this country ever since its settlement.

*Id.,* at 536.  The doctrine was upheld by the Court in the later case of *Bradley v. Fisher,* 13 Wall. (80 U.S.) 335, 20 L.Ed. 646 (1871), in which the Court stated further that charges of malice and corruption were not sufficient to overcome the judge's immunity.

Our Supreme Court and the English courts share the view that the proper functioning of the judicial system would be impaired if judges were personally accountable to other judges for the exercise of the judicial discretion vested in them by law.  That this is the concern is shown by the continual emphasis placed by the Court on the effect of the suit itself, rather than on its outcome.  This continuing concern is again demonstrated by the Court's restatement of the doctrine of judicial immunity in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and its holding that the defense continued to be available to state court judges in actions brought against them under 42 U.S.C. § 1983:

> [The judge's] errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.  Imposing such a burden on judges would contribute not to principled and

fearless decision-making but to intimidation.[2]

*Id.,* at 554, 87 S.Ct. at 1218.

Since *Pierson* referred to the doctrine of judicial immunity in the context of damages (the case before it) there has been some dispute as to whether the Court implied that the common-law immunity did not extend to *all* civil actions whether equitable or legal. An examination of the doctrine will dispel any such doubts. Both *Bradley* and *Randall* referred to judicial immunity from all "civil actions". Mr. Justice Miller, a member of the majority in both *Randall* and *Bradley,* speaking on Circuit at about the same time those cases were decided, stated what was understood to be the meaning of the phrase "civil actions":

> The phrase 'civil actions' includes actions at law, *suits in chancery,* proceedings in admiralty, and all other judicial controversies where rights of property are involved, whether between private parties, or such parties and the government. It is used here in contradistinction to prosecutions for crime.

*United States v. Ten Thousand Cigars,* 1 Woolw. 123, 28 Fed.Cas. 39 (1867) (emphasis added). Accord, *Green v. United States,* 9 Wall. (76 U.S.) 655, 19 L.Ed. 806 (1869); *Rison v. Cribbs,* 1 Dill. 181, 20 Fed.Cas. 833 (1870).[3] The Court, then understood itself to be including immunity from actions in equity when it enunciated the doctrine. In English law, which was the source of American common-law judicial immunity, judges were immune from equitable actions. *Heath v. Rydley, supra.* Likewise, the American common-law has also been held to preclude equitable relief. *Hill v. McClellan,* 490 F.2d 859 (5th Cir. 1974); *Clark v. State of Washington,* 366 F.2d 678 (9th Cir. 1966); *Peckham v. Scanlon,* 241 F.2d 761 (7th Cir.

1957); *Tate v. Arnold,* 223 F.2d 782 (8th Cir. 1955); *Smallwood v. United States,* 358 F.Supp. 398 (E.D.Mo.1973), aff'd 486 F.2d 1407 (8th Cir. 1973).

■ The purpose of judicial immunity is to protect judges from the distraction, harassment and intimidation of litigation regarding the exercise of their duties. Such a policy is not served by protecting a judge from actions for damages while exposing him to an action for an injunction.

■ To create an artificial distinction between injunctive and monetary relief against the judiciary would be preposterous and utterly defeat the purpose for which the rule of immunity was created. Since judges could be brought before other courts in actions for injunctions, the effect of the overall rule would only be to protect corrupt judges from having to recompense litigants for the harm·done to them. Innocent judges would be no less inconvenienced by equitable than legal actions and would presumably have nothing to fear from an action at law. Guilty judges, on the other hand, would be subject only to injunctive relief. To create a rule whose only effect is to insulate the purses of the guilty would be absurd.

> "[Judicial immunity] *is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences."*

*Bradley, supra,* at 350 (citation omitted) (emphasis in original).

In view of the important policies underlying judicial immunity, it can hardly be said that any substantial injustice is wreaked by protecting judges from having to appear before another court at the instance of indi-

---

**2.** "It is basic to our system of justice that the remedy for incorrect decision by a judge is appeal to a higher court rather than a suit against the judge." *Sandman v. Supreme Court of Georgia,* Civil Action No. 16832 (N.D.Ga. Order filed 9/5/72).

**3.** The point is further emphasized when it is considered that these decisions came some 66 years before the merger of law and equity in the federal courts.

vidual litigants. Litigants who feel themselves to be wronged by an adverse judgement have an available remedy by way of appeal. Nor does the unjust judge escape. In English law, the judge was responsible solely to the Sovereign whose power he was exercising. In this country that sovereignty resides in the People.

> In this country judges of the superior courts of record are only responsible to the people, or the authorities constituted by the people, from whom they receive their commissions, for the manner in which they discharge the great trusts of their office. If in the exercise of the powers with which they are clothed as ministers of justice, they act with partiality, or maliciously, or corruptly, they may be called to account by impeachment and suspended or removed from office.

*Bradley, supra,* at 350.

In this case, the Plaintiffs seek, in effect, to accomplish indirectly what they cannot do directly. They seek an appeal in this Court which was not timely perfected in State court and attempt to do so by suing the judge. The Complaint alleges as injury acts taken by the Defendant within his judicial jurisdiction and this Court holds that the Defendant is immune from such suits.

IT IS, THEREFORE, ORDERED that the Complaint against the Defendant, Owens T. Cobb, Jr., be, and hereby is, dismissed.

AND IT IS SO ORDERED.