498 S.E.2d 689

Sabina O'LAUGHLIN, Appellant,

v.

Kathy WINDHAM, d/b/a, Accents on Hair, Agnes Csikos and Susan Cure, Defendants,

Of Whom, Susan Cure is, Respondent.

No. 2809.

Court of Appeals of South Carolina.

Submitted Jan. 6, 1998.

Decided March 16, 1998.

Rehearing Denied April 23, 1998.

380

Jack D. Simrill, Hilton Head Island, for appellant.

Curtis Lee Coltrane, Hilton Head Island; and Marvin C. Jones, of Bogoslow & Jones, Walterboro, for respondents.

HOWARD, Judge:

Sabina O'Laughlin (O'Laughlin) brought this action against Susan Cure (Cure), a Hilton Head ministerial recorder. O'Laughlin alleged damages under several legal theories arising out of her arrest on a warrant issued by Cure. Cure moved to dismiss pursuant to Rule 12(b)(6), SCRCP, on the grounds of judicial immunity. The trial court granted Cure's motion, concluding common law judicial immunity survives the adoption of the South Carolina Tort Claims Act (the Tort Claims Act). O'Laughlin appeals. We affirm.[1]

## FACTS

O'Laughlin is a Jacksonville, Florida pathologist who visited Hilton Head Island on vacation. The facts alleged in the complaint are as follows. O'Laughlin and a friend patronized a local beauty salon, where O'Laughlin treated her friend to a manicure while she had her hair cut and colored. When presented with the bill, O'Laughlin paid with her credit card. Unfortunately, the bill did not include the cost of the manicure. When the manicurist realized the mistake, she called O'Laughlin and demanded that she immediately return and pay the remaining bill. Not satisfied with O'Laughlin's proposal to return at a more leisurely pace or send payment by mail, the manicurist sought help from Cure. Cure telephoned O'Laughlin and threatened to issue a warrant for her arrest if

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

she did not immediately pay the bill. Undaunted by this threat, O'Laughlin hung up. Cure then issued an arrest warrant for a violation of S.C.Code Ann. § 45–1–50 (1987), charging her with defrauding an innkeeper. O'Laughlin was subsequently arrested under the authority of the arrest warrant. O'Laughlin then paid the remaining bill, whereupon Cure dismissed the warrant and O'Laughlin was released. This action followed.

## ISSUES

1) Did the trial court err in finding that the Tort Claims Act does not supplant common law judicial immunity?

2) Did the trial court err in granting the motion to dismiss?

## STANDARD OF REVIEW

We first note O'Laughlin mistakenly characterizes the trial court's Order of Dismissal as a grant of summary judgment. O'Laughlin addresses issues on appeal beyond the scope of the pleadings. We find no evidence that Judge Dennis considered matters beyond the pleadings in holding that Cure was entitled to judicial immunity and in granting the motion to dismiss. *State Bd. of Medical Examiners v. Fenwick Hall,* 300 S.C. 274, 276, 387 S.E.2d 458, 459 (1990) ("A ruling on a 12(b)(6) motion to dismiss must be based *solely* upon allegations set forth on the face of a complaint."). Therefore, we limit our review to those portions of O'Laughlin's argument pertinent to issues raised by Judge Dennis's dismissal. *Brown v. Leverette,* 291 S.C. 364, 353 S.E.2d 697 (1987).

O'Laughlin also argues Respondent is "guilty" of actual malice, and harbored an intent to harm. This issue is pertinent to liability under the Tort Claims Act. Because we find that common law judicial immunity survives the Tort Claims Act as a complete defense, we need not address this issue.

The grant of a motion to dismiss will be sustained only if the facts alleged in the complaint do not support relief under any theory of law. *Stiles v. Onorato,* 318 S.C. 297, 457 S.E.2d 601 (1995). Judicial immunity affords absolute immunity from suit. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). In other words, judicial immuni-

ty, if applicable, acts as a bar to suit, not just as an ultimate bar to relief. Therefore, a finding of judicial immunity renders a complaint alleging judicial misconduct meritless.

## LAW/ANALYSIS

### I.

█ O'Laughlin first argues the limited immunity from suit provided under the Tort Claims Act supplants common law judicial immunity. The Tort Claims Act "grant[s] the State, its political subdivisions, and employees, while acting within the scope of official duty, immunity from liability and suit for any tort except as waived by this chapter." S.C.Code Ann. § 15–78–20(b) (Supp.1997). Section 15–78–70(b) of the Tort Claims Act provides:

Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties *or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.*

S.C.Code Ann. § 15–78–70(b) (Supp.1997) (emphasis added).

O'Laughlin alleges that Cure's actions were taken outside of the scope of her official duties and were motivated by malice. If the restriction on immunity found in section 15–78–70(b) supplants common law immunity, which is absolute, then O'Laughlin has stated a cause of action. However, after careful consideration, we conclude the trial court was correct in holding that common law judicial immunity survives the adoption of the Tort Claims Act.

The Tort Claims Act expressly preserves all existing common law immunities. The Act was adopted to ensure "that the State, and its political subdivisions are only liable for torts within the limitations of this chapter and in accordance with the principles established herein." S.C.Code Ann. § 15–78–20(a) (Supp.1997). It states:

The General Assembly additionally intends to provide for liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty, only to the extent provided herein. *All other immunities*

*applicable to a governmental entity, its employees, and agents are expressly preserved.*

S.C.Code Ann. § 15–78–20(b) (Supp.1997) (emphasis added). Therefore, the Act itself expressly preserves common law judicial immunity.

■ A strong presumption also exists that the General Assembly does not intend to supplant common law principles when enacting legislation. *Hoogenboom v. City of Beaufort*, 315 S.C. 306, 433 S.E.2d 875 (Ct.App.1992). *See also Frost v. Geernaert*, 200 Cal.App.3d 1104, 246 Cal.Rptr. 440, 442 (1988) (holding that common law judicial immunity survived the adoption of the California Tort Claims Act, stating, "statutes should not be interpreted to alter the common law unless it is expressly provided they should do so; there is a presumption that a statute, does not, by implication, repeal the common law.").

There is a strong policy reason for maintaining absolute judicial immunity, in situations where it applies. Judicial immunity is one of the basic common law tenets upon which the modern system of justice was built. In *Bradley v. Fisher*, 80 U.S. (13 Wall) 335, 20 L.Ed. 646 (1871), the United States Supreme Court recognized the importance of judicial immunity by holding, "[t]he principle, therefore, which exempts judges of courts of superior or general authority from liability in a civil action for acts done by them in the exercise of their judicial functions, obtains in all countries where there is any well ordered system of jurisprudence." *Id.* at 347. Simply stated, the absolute immunity afforded by common law judicial immunity is vital for the continuation of an independent judiciary and for the preservation of judicial integrity. *See McEachern v. Black*, 329 S.C. 642, 496 S.E.2d 659 (1998); *see also Fleming v. Asbill*, 326 S.C. 49, 483 S.E.2d 751 (1997).

Last, but not least, the South Carolina Supreme Court's holding in *Fleming v. Asbill* is instructive in determining the effect of the adoption of the Tort Claims Act. *Id.* In *Fleming*, the Court found that a guardian ad litem, while not an employee under the Tort Claims Act, was entitled to common law quasi-judicial immunity. *Id.* In so finding, the Court implicitly recognized that the common law principles of judi-

cial immunity, in some form, survive the adoption of the Tort Claims Act.

Based on the statutory language of the Tort Claims Act, the presumption of legislative intent to preserve common law principles, policy considerations, and the Supreme Court's holding in *Fleming,* we find that absolute judicial immunity, defined by common law, survives the adoption of the Tort Claims Act.

## II.

■ Though we find that common law judicial immunity survives the enactment of the Tort Claims Act, we recognize that the inquiry does not end with this determination. Judicial immunity is an absolute bar in the sense that it absolutely bars litigation against the judicial officer in certain circumstances. However, it is not without limitations. The United States Supreme Court has carved out three exceptions. *See* Erwin Chemerinsky, *Federal Jurisdiction* § 8.6 (2d ed.1994). First, no judicial immunity exists if the judge acts in the "clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Second, judicial immunity extends only to judicial acts. *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Finally, judges cannot claim judicial immunity for suits seeking only prospective, injunctive relief. *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984).[2]

■ However, in this case O'Laughlin did not allege in her complaint, nor does she address on appeal, the application of common law judicial immunity to Cure's actions. O'Laughlin argues that Cure's conduct was outside the "scope of her official duties", and Cure's conduct was malicious. This standard for imposing liability is applied in the context of the Tort Claims Act. The scope of Cure's official duties is not dispositive under common law judicial immunity. *See* S.C.Code Ann. § 15–78–70 (Supp.1997). The proper inquiry under common law immunity is whether Cure was performing a judicial act, and if so, whether she was acting in the clear absence of all

---

2. Because O'Laughlin's complaint does not allege matters requiring prospective or injunctive relief, we need not address the third limitation to judicial immunity.

jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

The question of whether an act is judicial in nature differs from whether it is within the scope of official duties. As the United States Supreme Court has articulated:

> whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.

*Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 1108, 55 L.Ed.2d 331 (1978). More recently, the Court has elaborated, stating:

> But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a 'nonjudicial' act, because an improper or erroneous act cannot be said to be normally performed by a judge.... Accordingly, as the language in *Stump* indicates, the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'

*Mireles v. Waco,* 502 U.S. 9, 12–13, 112 S.Ct. 286, 288–89, 116 L.Ed.2d 9 (1991). Therefore, this argument does not raise as an issue whether Cure, in acting outside the scope of her official duties, was performing a judicial act. Consequently, this issue is not preserved for our review. An issue is deemed abandoned if an appellant fails to provide argument and supporting authority for an alleged error. *First Sav. Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994).

Neither does the argument that Cure acted outside of the scope of her official duties raise the issue that she acted in the "clear absence of all jurisdiction." *McEachern v. Black,* 329 S.C. at 648, 496 S.E.2d at 662 (1998). "Subject matter jurisdiction is the power of a court to 'hear and determine cases of the general class to which the proceedings in question belong.'" *Id.* at 648, 496 S.E.2d at 662 (quoting *Brown v. Evatt,* 322 S.C. 189, 193, 470 S.E.2d 848, 850 (1996) and *Dove v. Gold Kist, Inc.,* 314 S.C. 235, 237, 442 S.E.2d 598, 600 (1994)). As is observed in 46 Am.Jur.2d *Judges* § 82, "Excess of jurisdiction, as distinguished from the entire absence of jurisdiction, means that the act, although within the general power of the judge, is

not authorized, and therefore void with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting, and hence the judicial power is not in fact lawfully invoked." *See also State v. Johnson,* 327 S.C. 396, 489 S.E.2d 228 (Ct.App.1997); *State v. Bynes,* 304 S.C. 62, 403 S.E.2d 126 (Ct.App.1991).

A judge who acts in excess of her authority in the particular case, but is not acting in the clear absence of all jurisdiction, is still entitled to the protection of common law judicial immunity. *McEachern v. Black,* 329 S.C. 642, 496 S.E.2d 659 (1998). Because O'Laughlin's arguments and authorities cannot be said to fairly raise this issue in either the lower court or in this court, it is not preserved for review.

O'Laughlin does argue that Cure is only entitled to limited judicial immunity because she has limited judicial power, citing as precedent the 1881 case, *McCall v. Cohen,* 16 S.C. 445 (1882).[3] In that case our Supreme Court afforded a judge with limited jurisdiction judicial immunity. The court stated in dicta that judicial immunity "is undoubtedly the law with reference to courts having general authority, and it is equally true in respect to judges of inferior courts, except *possibly* as to the right to call in question the motives with which they act—whether ignorantly or willfully and corruptly." *Id.* at 449 (emphasis added). No other cases have affirmed this dicta with any clarity.[4] The weight of authority favors the extension of common law judicial immunity to the judicial acts of all judicial officers, including those with limited jurisdiction. *See* 46 Am.Jur.2d *Judges* § 70 (1994). Judicial immunity is, in effect, self limiting in its application to courts of limited jurisdiction by its exceptions. Therefore, we decline to apply

**3.** As a ministerial recorder, Cure has statutorily defined powers which are clearly limited to the issuance of summonses, subpoenas, and warrants. S.C.Code Ann. § 14–25–115 (Supp.1997). This grant of power is expressly limited in the statute.

**4.** O'Laughlin also cites the case of *Town of Hopkins v. Cobb,* 466 F.Supp. 1215 (D.S.C.1979) for the proposition that judges of limited authority are not entitled to immunity. The *Town of Hopkins* court actually states that judges of superior or general authority are entitled to judicial immunity; it makes no mention of courts of limited jurisdiction. *Id.*

a "malicious acts" exception to immunity for courts of limited jurisdiction. It is well settled that even if Cure had been maliciously motivated, judicial immunity would still protect her actions as long as the act was not subject to the three exceptions to judicial immunity. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall) 335, 20 L.Ed. 646 (1871); *see also Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (Stewart, J., dissenting).

In conclusion, we hold that the South Carolina Tort Claims Act does not supplant common law judicial immunity. We find O'Laughlin's remaining arguments to be without merit. We decline to determine whether Cure's actions were protected by common law judicial immunity because this issue was not preserved for review. Accordingly, the trial court's dismissal of O'Laughlin's complaint is

**AFFIRMED.**

HOWELL, C.J., and CURETON, J., concur.