628 S.E.2d 496

**Doug PROCTOR d/b/a Anderson Tire Recycling, Respondent,**

v.

**DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Appellant.**

No. 4098.

Court of Appeals of South Carolina.

Heard March 8, 2006.

Decided March 20, 2006.

280

284

286

James W. Logan, Jr. and Stacey T. Coffee, of Anderson, for Appellant.

Jeffrey Falkner Wilkes, of Greenville, for Respondent.

ANDERSON, J.:

A jury rendered a $688,503 verdict for Doug Proctor d/b/a Anderson Tire Recycling (Proctor) against the Department of Health and Environmental Control (DHEC). The circuit judge reduced the award to $300,000 pursuant to S.C.Code Ann. § 15–78–120(a)(1). DHEC contends Proctor failed to prove gross negligence; the trial court incorrectly charged the jury; and the damages awarded were so unduly liberal or grossly excessive as to require a new trial. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Proctor owns and operates a waste tire processing and disposal facility in Anderson County, South Carolina. South Carolina law endows DHEC with the authority to issue permits to waste tire facilities. In 1993, when DHEC became involved in the regulation of waste tires, Proctor timely applied for all required permits. Proctor became a permitted facility for both waste tire processing and waste tire disposal.

The business of waste tire disposal turns on the availability of a per-tire rebate allowed by the South Carolina Department of Revenue. Section 44–96–170(N) requires sellers of new tires to pay a two-dollar fee to the Department of Transportation for every new tire sold. S.C.Code Ann. § 44–96–170(N) (2005). However, section 44–96–170(O) provides, "A wholesaler or retailer required to submit a fee pursuant to subsection (N) who delivers or arranges delivery of waste tires to a permitted or approved waste tire recycling facility ... may apply for a refund of one dollar for each tire delivered." S.C.Code Ann. § 44–96–170(O) (2005). A tire retailer is entitled to a one-dollar rebate per tire for each used tire delivered to a permitted waste tire facility. Hence, the rebate essentially pays for the new-tire dealer's disposal of waste tires as the

dealer pays a dollar to a waste tire disposal facility and gets back a dollar via the rebate.

DHEC maintains a list of approved waste tire recycling facilities. DHEC forwards the list to the Department of Revenue, and the Department of Revenue provides the rebate. The Director of Solid Waste Management, and later the Director of Solid Waste Reduction and Recycling with the Bureau of Land and Waste Management, William Culler, compiled the rebate list.

In 1998, DHEC found Proctor in violation of his permit and DHEC regulations. DHEC initiated an enforcement action, levied a fine against Proctor, and removed him from the rebate list. The case was eventually heard by this Court and resulted in an unpublished opinion. The underlying facts of the instant action are described in our prior opinion:

> DHEC deferred enforcement action based on Proctor's commitment to build sheds where used tires for sale to the public could be separately stored. However, only one shed was constructed, and site conditions did not improve.
>
> In September 1998, DHEC issued an administrative order to Proctor to take corrective action at the site and pay a civil penalty of $51,330. The order cited Proctor for numerous violations relating to storage of waste tires and removed Proctor from DHEC's Waste Tire Facility Rebate List....
>
> Proctor appealed the order to the Administrative Law Judge Division. The Administrative Law Judge (ALJ) upheld $8,200 of the penalty and ordered Proctor to close out the on-site drain field, clean and maintain fire access lanes, and cease commingling waste and used tires. The ALJ also ordered that Proctor be reinstated to the Waste Tire Rebate List. Both Proctor and DHEC appealed to the DHEC Board. The Board made its own findings of fact that the site exceeded the 1,500 tires allowed. Based on its factual findings, it partially reversed the ALJ, removed Proctor from the Waste Tire Rebate List until he complied with his permit and the regulations, and increased the civil penalty by $500 to $8,700. Proctor appealed to the circuit court, which affirmed the Board's decision.

*Doug Proctor d/b/a Anderson Tire Recycling v. South Carolina Dep't of Health and Envtl. Control,* 2003–UP–472 (S.C.

Ct.App. filed July 24, 2003). We reversed the Board's increase of the fine and removal of Proctor from the rebate list:

> Proctor also argues the Board erred in reversing the ALJ's order by increasing the fine where it was supported by substantial evidence. In a related argument, he contends the Board erred in overturning the ALJ's decision that he should remain on DHEC's Waste Tire Rebate List. We agree and reverse those portions of the Board's order.
>
> Under South Carolina Code Annotated § 44–96–170(O) (2002), any retailer that sells new tires and delivers collected waste tires to a permitted facility is entitled to a refund of one dollar per waste tire delivered. If a tire retailer does not deliver its waste tires to a licensed waste tire facility, it is not eligible to claim the refund. Although DHEC's administrative order took Proctor off the rebate list, the ALJ ordered that Proctor be restored to the list. The Board then ordered Proctor's facility to be removed from the list until Proctor demonstrated "full compliance with this Order, his permits, and applicable law and regulation." The Board erred in doing so.
>
> The ALJ found Proctor violated waste tire laws, but also found DHEC did not provide sufficient evidence to establish that he exceeded his storage limits or that he was indifferent to regulatory requirements. As substantial evidence supports the ALJ's decision to restore Proctor to the rebate list and supports the fine imposed, the Board erred in reversing the ALJ. Further, section 44–96–170(O), which sets forth the rebate system, indicates that as long as a wholesaler or retailer delivers waste tires to a permitted or approved waste tire recycling facility, he may apply for the refund. All permitted facilities are thus on the rebate list. There is no authority for the ALJ, or any other entity, to remove a licensed business from the list; only by revoking or suspending its license can an entity be removed from the list. As a licensed entity, Proctor is entitled to remain on the Waste Tire Rebate List.

*Proctor*, 2003–UP–472 (S.C. Ct.App. filed July 24, 2003).

Proctor subsequently was restored to the rebate list. Proctor initiated this action, maintaining DHEC was grossly negligent under section 15–78–60(12) of the South Carolina Code

by keeping his facility off of the rebate list from 2000 until after this Court's decision in 2003. DHEC moved for a directed verdict on the ground Proctor failed to establish DHEC exercised a power or function in a grossly negligent manner. The trial court denied the directed verdict motion, and the jury awarded actual damages to Proctor in the amount of $688,503. Pursuant to Section 15–78–120(a)(1) of the South Carolina Code, the award was reduced to the statutory maximum of $300,000. DHEC moved for a judgment not withstanding the verdict (JNOV), or, in the alterative, a new trial or new trial *nisi remittitur*. The trial court denied these motions.

## *LAW/ANALYSIS*

### I. Tort Claims Act

#### A. Waiver of Immunity

■ "The Tort Claims Act governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity or its employees." *Parker v. Spartanburg Sanitary Sewer Dist.*, 362 S.C. 276, 280, 607 S.E.2d 711, 714 (Ct.App.2005) (citing *Flateau v. Harrelson*, 355 S.C. 197, 584 S.E.2d 413 (Ct.App.2003); *Wells v. City of Lynchburg*, 331 S.C. 296, 501 S.E.2d 746 (Ct.App. 1998)); *Hawkins v. City of Greenville*, 358 S.C. 280, 291, 594 S.E.2d 557, 563 (Ct.App.2004). "Notwithstanding any provision of law, this chapter, the 'South Carolina Tort Claims Act', is the exclusive and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employee's official duty." S.C.Code Ann. § 15–78–200 (2005); *see also Olson v. Faculty House of Carolina, Inc.*, 344 S.C. 194, 544 S.E.2d 38 (2001) (observing the Tort Claims Act is the exclusive remedy for tort claims against governmental entities), *aff'd*, 354 S.C. 161, 580 S.E.2d 440 (2003).

■ The Act provides: "The State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." S.C.Code Ann. § 15–78–40 (2005).

Section 15–78–30(d) defines "governmental entity" as "the State and its political subdivisions." S.C.Code Ann. § 15–78–30(d) (2005); *see Hawkins,* 358 S.C. at 292, 594 S.E.2d at 563; *Flateau,* 355 S.C. at 204, 584 S.E.2d at 416. "The Tort Claims Act waives sovereign immunity for torts committed by the State, its political subdivisions, and governmental employees acting within the scope of their official duties." *Bayle v. S.C. Dep't of Transp.,* 344 S.C. 115, 121, 542 S.E.2d 736, 739 (Ct.App.2001).

■ However, the Act's waiver of governmental immunity is limited. *Hawkins,* 358 S.C. at 293, 594 S.E.2d at 564. Section 15–78–60 currently contains forty exceptions to the waiver of immunity. *See* S.C.Code Ann. § 15–78–60 (2005 & Supp.2005). Moreover, the provisions of the Act "must be liberally construed in favor of limiting the liability of the State." S.C.Code Ann. § 15–78–20(f) (2005); *see also Steinke v. S.C. Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 393, 520 S.E.2d 142, 152 (1999) ("Provisions establishing limitations upon and exemptions from liability of a governmental entity must be liberally construed in favor of limiting liability."); *Baker v. Sanders,* 301 S.C. 170, 391 S.E.2d 229 (1990); *Staubes v. City of Folly Beach,* 331 S.C. 192, 500 S.E.2d 160 (Ct.App.1998), *aff'd,* 339 S.C. 406, 529 S.E.2d 543 (2000); *Rakestraw v. S.C. Dep't of Highways and Public Transp.,* 323 S.C. 227, 473 S.E.2d 890 (Ct.App.1996). The Act expressly preserves all existing common-law immunities. S.C.Code Ann. § 15–78–20(b) ("The General Assembly additionally intends to provide for liability on the part of the State, its political subdivisions, and employees, while acting within the scope of official duty, only to the extent provided herein. All other immunities applicable to a governmental entity, its employees, and agents are expressly preserved."); *see also Williams v. Condon,* 347 S.C. 227, 246, 553 S.E.2d 496, 507 (Ct.App.2001) ("The Tort Claims Act expressly preserves all existing common law immunities."); *O'Laughlin v. Windham,* 330 S.C. 379, 498 S.E.2d 689 (Ct.App.1998). "The Act does not create a cause of action." *Bayle,* 344 S.C. at 121, 542 S.E.2d at 739. "The Act does not create a new substantive cause of action against a governmental entity." *Hawkins,* 358 S.C. at 292, 594 S.E.2d at 563 (citing *Moore v. Florence Sch. Dist. No. 1,* 314 S.C. 335, 339, 444 S.E.2d 498, 500 (1994)).

■ "The burden of establishing a limitation upon liability or an exception to the waiver of immunity under the Tort Claims Act is upon the governmental entity asserting it as an affirmative defense." *Steinke*, 336 S.C. at 393, 520 S.E.2d at 152; *accord Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 430, 445 S.E.2d 439, 440 (1994); *Faile v. S.C. Dep't of Juvenile Justice*, 350 S.C. 315, 324, 566 S.E.2d 536, 540 (2002) ("The governmental entity claiming an exception to the waiver of immunity under the Tort Claims Act has the burden of establishing any limitation on liability.") (citation omitted).

## B. Section 15–78–60(12)

DHEC contends the trial court erred in denying its motions for directed verdict, JNOV, and a new trial because Proctor failed to prove gross negligence under section 15–78–60(12). We disagree.

### 1. Standard of Review

"When reviewing the denial of a motion for directed verdict or JNOV, an appellate court must employ the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 27–28, 602 S.E.2d 772, 782 (2004) (citing *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 445 S.E.2d 439 (1994)); *Sabb v. S.C. State Univ.*, 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002); *see The Huffines Co., LLC v. Lockhart*, 365 S.C. 178, 187, 617 S.E.2d 125, 129 (Ct.App.2005) ("In ruling on motions for directed verdict or judgment notwithstanding the verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt."). If the evidence as a whole is susceptible to more than one reasonable inference, a jury issue is created and the motion should be denied. *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995); *Bailey v. Segars*, 346 S.C. 359, 365, 550 S.E.2d 910, 913 (Ct.App.2001). However, this rule does not authorize submission of speculative, theoretical, and hypo-

thetical views to the jury. *Hanahan v. Simpson,* 326 S.C. 140, 149, 485 S.E.2d 903, 908 (1997); *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 461, 494 S.E.2d 835, 841 (Ct.App.1997). In essence, the court must determine whether a verdict for the opposing party "would be reasonably possible under the facts as liberally construed in his favor." *Harvey v. Strickland,* 350 S.C. 303, 309, 566 S.E.2d 529, 532 (2002). If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and the motion should have been denied. *Jinks v. Richland County,* 355 S.C. 341, 345, 585 S.E.2d 281, 283 (2003); *Adams,* 320 S.C. at 277, 465 S.E.2d at 85.

On appeal from the denial of a motion for a directed verdict, the appellate court may only reverse if there is no evidence to support the trial court's ruling, or where the ruling was controlled by an error of law. *Clark v. S.C. Dep't of Public Safety,* 362 S.C. 377, 382–83, 608 S.E.2d 573, 576 (2005); *Abu–Shawareb v. S.C. State Univ.,* 364 S.C. 358, 613 S.E.2d 757 (Ct.App.2005); *S.C. Prop. & Cas. Guar. Ass'n v. Yensen,* 345 S.C. 512, 521, 548 S.E.2d 880, 884–85 (Ct.App.2001). The rule in South Carolina is that on motions for nonsuit, directed verdict, JNOV, and new trial, the evidence and all reasonable inferences which have to be drawn from it must be viewed in a light most favorable to the nonmoving party and if there is any testimony tending to prove allegations of the complaint, the motions must be refused. This rule is especially strong in South Carolina where the "scintilla of evidence rule" is applied. *Sweatt v. Norman,* 283 S.C. 443, 446, 322 S.E.2d 478, 480 (Ct.App.1984). If there is any evidence which could support the jury's findings of gross negligence against DHEC, then the motions for directed verdict, JNOV, and new trial were properly denied. *Cf. Jackson v. S.C. Dept. of Corrections,* 301 S.C. 125, 127, 390 S.E.2d 467, 468 (Ct.App.1989), *aff'd,* 302 S.C. 519, 397 S.E.2d 377 (1990).

## 2. DHEC's Gross Negligence

At trial, Proctor proceeded on the theory of gross negligence under section 15–78–60(12), which provides:

The governmental entity is not liable for loss resulting from:

. . . .

(12) licensing powers of functions including, but not limited to, the issuance, denial, suspension, renewal, or revocation of

or failure or refusal to issue, deny, suspend, renew, or revoke any permit, license, certificate, approval, registration, order, or similar authority, **except when the power or function is exercised in a grossly negligent manner**.... S.C.Code Ann. § 15–78–60(12) (emphasis added).

"Gross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Clyburn v. Sumter County Sch. Dist. No. 17*, 317 S.C. 50, 53, 451 S.E.2d 885, 887 (1994); *accord Jinks v. Richland County*, 355 S.C. 341, 344, 585 S.E.2d 281, 283 (2003); *Worsley Cos., Inc. v. Town of Mount Pleasant*, 339 S.C. 51, 57, 528 S.E.2d 657, 661 (2000); *Marietta Garage, Inc. v. S.C. Dep't of Public Safety*, 337 S.C. 133, 522 S.E.2d 605 (Ct.App.1999). It is the failure to exercise even the slightest care. *Faile v. South Carolina Dep't of Juvenile Justice*, 350 S.C. 315, 331–32, 566 S.E.2d 536, 544 (2002); *Rakestraw v. S.C. Dep't of Highways and Public Transp.*, 323 S.C. 227, 473 S.E.2d 890 (Ct.App. 1996). "Gross negligence ... means the absence of care that is necessary under the circumstances." *Etheredge v. Richland Sch. Dist. One*, 341 S.C. 307, 310, 534 S.E.2d 275, 277 (2000); *accord Hicks v. McCandlish*, 221 S.C. 410, 70 S.E.2d 629 (1952); *see also Jinks*, 355 S.C. at 344, 585 S.E.2d at 283 ("Gross negligence has also been defined as a relative term and means the absence of care that is necessary under the circumstances.") (citing *Hollins v. Richland County School Dist. 1*, 310 S.C. 486, 427 S.E.2d 654 (1993)). "Negligence is the failure to exercise due care, while gross negligence is the failure to exercise slight care." *Clyburn*, 317 S.C. at 53, 451 S.E.2d at 887.

Gross negligence is ordinarily a mixed question of law and fact. *Clyburn*, 317 S.C. at 53, 451 S.E.2d at 887; *Pack v. Associated Marine Institutes, Inc.*, 362 S.C. 239, 245, 608 S.E.2d 134, 138 (Ct.App.2004); *Faile*, 350 S.C. at 332, 566 S.E.2d at 545. "In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury." *Faile*, 350 S.C. at 332, 566 S.E.2d at 545. "[W]hile gross negligence ordinarily is a mixed question of law and fact, when the evidence supports but one reasonable inference, the question becomes a matter of law for the court." *Etheredge*,

341 S.C. at 310, 534 S.E.2d at 277; *see also Staubes v. City of Folly Beach,* 331 S.C. 192, 205, 500 S.E.2d 160, 168 (Ct.App. 1998) ("Gross negligence is a mixed question of law and fact and should be presented to the jury unless the evidence supports only one reasonable inference."), *aff'd,* 339 S.C. 406, 529 S.E.2d 543 (2000).

Pursuant to S.C.Code Ann. section 44–96–170(O) (2002), any retailer that sells new tires and delivers waste tires to a permitted facility is entitled to a one-dollar rebate for every waste tire delivered. All permitted waste tire facilities are thus on the rebate list. As held in our prior unpublished opinion, DHEC erroneously removed Proctor from the rebate list. Further, DHEC violated 25 S.C.Code Ann. Regs. 61–72.205(A) (Supp.2005), which provides, "A petition for review of an order stays the order." DHEC did not stay its decision to remove Proctor from the rebate list even though he filed an appeal.

At trial, Proctor questioned former DHEC employee, George Tomlin, on the protocol for inspecting his tire disposal facility:

Q. Okay. Mr. Tomlin, are you familiar with the inspection procedures that DHEC does, in other words, the frequency, how often they do an inspection?

A. Yes, I'm familiar with it.

Q. In the solid waste section, I believe, is where Mr. Simpson worked; is that correct?

A. That is correct.

Q. And Mr. Simpson was the person while you were there who inspected Anderson Tire Recycling's facility; is that correct?

A. That's correct.

Q. Okay. Did you know if he—was he required to make inspections?

A. Yes, he was.

Q. Okay. Was there a policy that he make inspections periodically?

A. It was a policy for him to follow the requirements of the program to make inspections on a monthly basis.

DHEC's policy was to inspect facilities on a monthly basis. However, once DHEC removed Proctor from the list, it refused to inspect his facility, even though a favorable inspection was a prerequisite to his being restored to the list. DHEC did not inspect Proctor's facility for over four years, despite his requests for an inspection. DHEC employee Arthur Braswell could not explain the entity's failure to inspect:

Q. .... What's the purpose of not coming to the facility for four years and four months?

A. I can't answer that. I don't know why our inspections weren't done.

Q. Who would be to blame for not doing these inspections?

A. Well, not to blame, but our districts are responsible for doing inspections at facilities.

On appeal, DHEC argues that Proctor would not have been put back on the list even if he had obtained a clear inspection because he had not paid the fine. The evidence at trial suggests otherwise. Proctor questioned Arthur Braswell on this very point:

Q. When Mr. Shissias told you to go to the facility and check it out, did he tell you to discuss that Mr. Proctor should pay the fine before he could get back on the list?

A. No. He—he discussed exactly what I told you during the meeting, or our inspection, that if you were in compliance, there was a good chance you would be put back on the list that week

Q. So the supervisors ... were the ones that were more concerned about getting the money, is that correct, than the compliance?

 . . . .

A. The money wasn't—they were willing to let the money go in order for some additional conditions at the site to improve the compliance of the facility. We discussed those issues during my inspection with you on April 10th, just as ideas of what would make the site better.

Q. But they weren't your conditions that you related to Mr. Proctor to be able to go back on the rebate list.

A. They were not stated as conditions during the inspection; they were in that letter that was sent to you.

Proctor remained a permitted facility, yet DHEC did not perform an inspection, as it was its policy to do. Further, DHEC ignored Proctor's requests for an inspection. Proctor could not return to the rebate list without an inspection, and DHEC, without explanation, refused to give him an inspection for over four years.

There is sufficient evidence to support the jury's finding of intentional, conscious failure by DHEC to do that which it ought to have done. The record supports the trial court's denial of DHEC's motions for a directed verdict, JNOV, and a new trial.

## II. Section 15–78–60(1)–(5); (13) (2005)

### A. Exceptions to the Waiver of Immunity

DHEC contends the trial court erred in denying its motion in limine and motion for a directed verdict regarding charging the jury on subsections (1), (2), (3), (4), (5), and (13) of S.C.Code Ann. § 15–78–60 (2005). We disagree.

The exceptions DHEC claims provide:

The governmental entity is not liable for a loss resulting from:

(1) legislative, judicial, or quasi-judicial action or inaction;

(2) administrative action or inaction of a legislative, judicial, or quasi-judicial nature;

(3) execution, enforcement, or implementation of the orders of any court or execution, enforcement, or lawful implementation of any process;

(4) adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies;

(5) the exercise of discretion or judgment by the governmental entity or employee of the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee;

. . .

(13) regulatory inspection powers or functions, including failure to make an inspection, or making an inadequate or negligent inspection, of any property to determine whether the property complies with or violates any law, regulation, code or ordinance or contains a hazard to health or safety[.]

S.C.Code Ann. § 15–78–60 (2005).

*Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004), addressed the exception found in subsection (1) of section 15–78–60. Louie Hawkins sued the city of Greenville for improper and negligent design and maintenance of its municipal drainage system. Hawkins alleged the City's malfeasance caused his property to flood. This Court affirmed the trial court's grant of summary judgment in favor of the City. We noted that among other applicable exceptions to the waiver of immunity, "the City [wa]s not liable for loss resulting from: 'legislative, judicial, or quasi-judicial action or inaction[.]'" *Id.* at 293, 594 S.E.2d at 564. We instructed:

> For each of these specific provisions, the determination of immunity from tort liability turns on the question of whether the acts in question were discretionary rather than ministerial. A finding of immunity under the Act "is contingent on proof the government entity, faced with alternatives, actually weighed competing considerations and made a conscious choice using accepted professional standards." *Wooten ex rel. Wooten v. South Carolina Dep't of Transp.,* 333 S.C. 464, 468, 511 S.E.2d 355, 357 (1999). "The governmental entity bears the burden of establishing discretionary immunity as an affirmative defense." *Sabb v. South Carolina State Univ.,* 350 S.C. 416, 428, 567 S.E.2d 231, 237 (2002).

Although our courts have not applied the Tort Claims Act to facts similar to those of the present case, the Supreme Court of Texas has held that municipalities are not liable for the design and planning of their sewage and drainage systems because these acts are considered quasi-judicial, discretionary functions for which a government entity is not liable. *City of Tyler v. Likes,* 962 S.W.2d 489, 501 (Tex. 1997). The court in *City of Tyler* opined:

> The duties of the municipal authorities in adopting a general plan of drainage, and determining when and

where sewers shall be built, of what size and at what level, are of a quasi judicial nature, involving the exercise of deliberate judgment and large discretion, and depending upon considerations affecting the public health and general convenience throughout an extensive territory; and the exercise of such judgment and discretion in the selection and adoption of a general plan or system of drainage is not subject to revision by a court or jury in a private action for not sufficiently draining a particular lot of land.

*Id.* We find a comparable degree of discretion was granted to the City in the present case to exercise the measured policy judgments required to build and maintain an adequate municipal sewer and drainage system in Greenville. Accordingly, the City is immune from liability for negligence claims arising out of the design and maintenance of the drainage system in the Laurel Creek Basin.

*Hawkins,* 358 S.C. at 293–94, 594 S.E.2d at 564.

*Faile v. S.C. Dep't of Juvenile Justice,* 350 S.C. 315, 566 S.E.2d 536 (2002), involved a suit against the Department of Juvenile Justice by the parents of Brandon Faile, a nine-year-old boy who was attacked by a twelve-year-old named Fredrico. Fredrico had a substantial record with DJJ, and had recently been put on probation with a one year suspended commitment to DJJ. The Department removed Fredrico from his parents' home and placed him in a therapeutic foster home. This arrangement was short-lived, however, as Fredrico was expelled from the foster home after threatening his foster mother with a gun he had stolen from a school police officer. Fredrico's DJJ probation counselor, Dorsey, returned Fredrico to the care of his biological mother, claiming no alternative placement was available.

Dorsey then filed a Rule to Show Cause with the family court to show why Fredrico's probation should not be revoked, and Dorsey informed the judge that he would recommend Fredrico be committed to DJJ. Dorsey did not tell the judge that Fredrico's current placement with his mother was in violation of a prior order. The judge scheduled a hearing, but Fredrico assaulted Faile before the court heard the matter.

Faile's parents maintained the Department was grossly negligent in placing Fredrico back in his family home. The trial court granted summary judgment for the Department, ruling it was immune from suit under section 15–78–60(1). This Court reversed, finding a question of fact whether the trial judge ratified Dorsey's administrative act of placing Fredrico with his biological mother. The supreme court affirmed, edifying:

The issue of whether juvenile probation officers are entitled to quasi-judicial immunity under the Tort Claims Act is one of first impression in South Carolina. Section 15–78–60(1) provides: "[t]he governmental entity is not liable for a loss resulting from: legislative, judicial, or quasi-judicial action or inaction." In addition to the judicial immunity under the Tort Claims Act, common law judicial immunity was expressly preserved in South Carolina under the Tort Claims Act. *O'Laughlin v. Windham*, 330 S.C. 379, 498 S.E.2d 689 (Ct.App.1998), *cert. denied* 1999 Shearouse Adv. Sh. No. 10 at p. iv.

South Carolina recognizes three exceptions to judicial or quasi-judicial immunity. Judges and other officials are not entitled to judicial immunity if: (1) they did not have jurisdiction to act; (2) the act did not serve a judicial function; or (3) the suit is for prospective, injunctive relief only. *Id.* at 385, 566 S.E.2d 536, 498 S.E.2d at 692. The second exception, which emphasizes the importance of the act, as opposed to the actor, is relevant here. Under the second exception, even judges are not insulated by judicial immunity when they act in an administrative capacity. *Id.* (citing *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). In determining whether an act is judicial, the Court looks to the nature and function of the act. *Id.; Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

Therefore, we must determine whether probation officer Dorsey's placement of Fredrico had the nature and function of a judicial act, thereby entitling him, and thus DJJ, to quasi-judicial immunity.

Much of the analysis of judicial immunity has been made in the federal arena. Several federal circuits have granted

probation officers quasi-judicial immunity, but only when carrying out certain functions the courts have deemed to be judicial. The Tenth Circuit has held that federal probation officers are absolutely immune when the action challenged is "intimately associated with the judicial phase of the criminal process." *Tripati v. United States Immigration & Naturalization Serv.*, 784 F.2d 345 (10th Cir.1986) (finding probation officer immune for damages resulting from reporting plaintiff's conviction to immigration authorities). The Tenth Circuit has made clear the immunity arises from protected functions, not from protected individuals. *Mee v. Ortega*, 967 F.2d 423 (10th Cir.1992); *Forrester, supra.* The key element is whether the officer was engaged in adjudicatory duties when the challenged act occurred. *Harper v. Jeffries*, 808 F.2d 281 (3d Cir.1986).

Other federal circuit courts have granted probation officers absolute immunity in preparing pre-sentencing reports, and in other situations when they act "as an arm of the court." *Gant v. United States Probation Office*, 994 F.Supp. 729, 733 (S.D.W.Va.1998) (citations omitted). Many of these courts, however, find no absolute immunity for the same type of officer when the officer is acting in his executive capacity. *Gant, supra; Ray v. Pickett*, 734 F.2d 370 (8th Cir.1984); *Ortega, supra; see also Harper v. Jeffries*, 808 F.2d 281 (3d Cir.1986) (denying absolute immunity of probation officer for charging appellant and presenting evidence against him at a parole hearing, because those were his duties as a parole officer).

If the individual is acting pursuant to a direct court order, courts are more likely to grant quasi-judicial immunity for that action. In *Babcock v. Tyler*, 884 F.2d 497 (9th Cir. 1989), a father sued the state for the actions of two social workers who placed his daughters in a home where they were sexually abused. The social workers placed the girls temporarily in the abusive home in April 1982. *Id.* at 504. The juvenile court confirmed the placement by order in May 1982. The sexual abuse did not occur until sometime after May. *Id.* Plaintiffs argued the social workers were not entitled to immunity for the temporary placement of the girls before the court order was issued. The court discounted this argument as irrelevant, however, on the grounds the

abuse did not occur until **after** the court had confirmed the placement. *Id.*

Respondents argue the court's confirmation of the placement was essential to the court's finding of judicial immunity in *Babcock.* Conversely, DJJ cites *Babcock* as holding that placement is a judicial act even if not made pursuant to a direct court order. DJJ's argument, however, overlooks that the judge formally confirmed the placement **before** the injury took place. In the present case, Judge Barrineau's mere knowledge that Fredrico was placed in his family's home, in the absence of any further act by him, does not amount to confirmation or ratification of Dorsey's act.

Viewing the facts and all inferences that can be drawn in the light most favorable to Respondents, as the non-moving party, the trial court erred in granting summary judgment to DJJ on this ground. We agree with our Court of Appeals' conclusion that the placement of juveniles by a probation counselor is an administrative function. We find persuasive the precedent discussed above from other jurisdictions which supports this analysis. Just as police officers are not granted absolute immunity when they apply for arrest warrants, probation officers generally are not immune in performing their enforcement duties. *See Gant, supra; Acevedo v. Pima County Adult Prob. Dep't,* 142 Ariz. 319, 690 P.2d 38 (1984) (holding that supervision of probationers is an administrative task, unconnected with the performance of a judicial function). Dorsey's placement of Fredrico was administrative. The Family Court's mere knowledge that Dorsey placed Fredrico with his family, without more, is insufficient to convert that placement into a judicial act.

For the forgoing reasons, we conclude DJJ is not entitled to quasi-judicial immunity.

*Faile,* 350 S.C. at 324–27, 566 S.E.2d at 540–42 (footnotes omitted).

*Williams v. Condon,* 347 S.C. 227, 553 S.E.2d 496 (Ct.App. 2001), construed subsections (1) and (2) of section 15–78–60 in the context of a suit against a solicitor and the Attorney General of South Carolina. The *Williams* court affirmed the trial court's dismissal of the case, in part, pursuant to subsections (1) and (2):

In 1985, our Supreme Court decided *McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741. This case is significant because the Court largely abolished the doctrine of sovereign immunity. Certain exceptions to this holding, however, were carved out:

[T]he abrogation of the rule will not extend to legislative, judicial and executive acts by individuals acting in their official capacity. These discretionary activities cannot be controlled by threat of tort liability by members of the public who take issue with the decisions made by public officials. We expressly decline to allow tort liability for these discretionary acts. The exercise of discretion includes the right to be wrong.

*Id.* at 246, 553 S.E.2d 496, 329 S.E.2d at 742.

When the General Assembly enacted the Tort Claims Act, it codified the *McCall* exceptions. *See* S.C.Code Ann. § 15–78–60(1)(2) (Supp.2000) (stating "The governmental entity is not liable for a loss resulting from (1) legislative, judicial, or quasi-judicial action or inaction; and (2) administrative action or inaction of a legislative, judicial, or quasi-judicial nature").

*Williams*, 347 S.C. at 248–49, 553 S.E.2d at 508.

We determined that the "duties of a prosecutor fall into the exceptions enumerated by *McCall* and § 15–78–60." *Id.* at 249, 553 S.E.2d at 508.

The case law cited throughout this opinion clearly supports the proposition that a prosecutor's typical duties are "judicial" or "quasi-judicial" in nature. Accordingly, this Court finds a prosecutor, in his official capacity, is immune from a Tort Claims Act suit involving "judicial" or "quasi-judicial" acts, provided a defendant prosecutor raises the affirmative defense of sovereign immunity in his return. *See Tanner v. Florence City–County Bldg. Comm'n*, 333 S.C. 549, 511 S.E.2d 369 (Ct.App.1999) (holding sovereign immunity is an affirmative defense that must be pled).

*Williams*, 347 S.C. at 249, 553 S.E.2d at 508.

*Wortman v. Spartanburg*, 310 S.C. 1, 425 S.E.2d 18 (1992), analyzed subsections (3) and (4) of section 15–78–60. Police arrested Wortman for possession of out-of-state lottery tickets, but the arresting officer dismissed the charges on the day

of trial. Wortman sued the City claiming his arrest was unlawful because possession of lottery tickets was not illegal. The City obtained summary judgment, in part, on the trial judge's finding section 15-78-60(3) and (4) exempted the City from liability. The supreme court reversed, holding the City was not entitled to summary judgment under the claimed exceptions:

> The facts in the record establish that Wortman was arrested *before* the City obtained a warrant from a magistrate. Thus, the actions of the police did not occur during the execution or enforcement of the order of any court or during the lawful implementation of any process, as contemplated by section 15-78-60(3). As to section 15-78-60(4), the City cannot claim that Wortman's arrest for possession of lottery tickets resulted from its attempt to enforce a law absent a showing that a law exists that prohibits the possession of lottery tickets.

> We conclude that the actions of the City do not fall within the exception provisions of sections 15-78-60(3) and (4). Consequently, we hold that the trial judge erred in granting summary judgment on the ground that the City was immune from liability under the Tort Claims Act.

*Wortman*, 310 S.C. at 3-4, 425 S.E.2d at 20.

At issue in *Adkins v. Varn*, 312 S.C. 188, 439 S.E.2d 822 (1993), was whether section 15-78-60(4) provided immunity to Greenville County for its failure to enforce an ordinance. The case arose when several vicious dogs chased a young girl on a bicycle into a street. The girl was struck and killed by an automobile as she attempted to flee from the dogs. Local residents had complained about the dogs to county animal control, and one neighbor had called the County at least five times just prior to the accident. The trial court dismissed the action, finding the County was immune from liability for failure to enforce an ordinance. The supreme court agreed:

> The present facts establish that the County had notice that several vicious dogs were at large in the neighborhood. The facts also show that the County, for whatever reason, did not enforce the ordinance on these particular animals. It is undisputed that the County is a governmental entity within the meaning of the South Carolina Torts Claim Act,

and therefore, is subject to the provisions of S.C.Code Ann. § 15–78–60(4).

The provisions of Section 15–78–60(4) are clear and unambiguous on their face, and are not subject to judicial interpretation. The statute clearly exempts from liability any loss resulting from the failure to enforce an ordinance; therefore, the County is immune from suit for any loss as a result of their non-enforcement of the animal control ordinance.

*Adkins*, 312 S.C. at 191–92, 439 S.E.2d at 824.

In *Clark v. S.C. Dep't of Public Safety*, 353 S.C. 291, 578 S.E.2d 16 (Ct.App.2002), Amy Clark was killed when Charles Johnson crossed the centerline and hit her head-on. Police were chasing Johnson when the accident occurred. Trooper Lonnie Plyler was the supervisor at the time of the chase, but did not monitor the pursuit because he was administering a breathalyzer examination. Clark's father sued the Department and Johnson, and a jury returned a verdict of $3.75 million in damages against them. The Department's $750,000 share of the damages was reduced to $250,000—the statutory maximum in place at the time. At some point the jury submitted a note, which read: "The Vehicle [and] Foot Pursuit Policy of SCDPS [the Department] dictates supervision of all pursuits. During this pursuit no supervisors were present or notified until after the pursuit was ended. It is our decision that this designates gross neglect on the behalf of SCDPS." *Id.* at 298, 578 S.E.2d at 19–20. Among its arguments on appeal, the Department contended "it was entitled to absolute immunity as a matter of law under section 15–78–60(4) of the Tort Claims Act." *Id.* at 306, 578 S.E.2d at 24.

In 1996, the Department adopted the South Carolina Department of Public Safety Policy Directive, Vehicle and Foot Pursuit Policy, which addresses the duties of troopers and their supervisors. The Pursuit Policy requires a supervisor to monitor all pursuits and states in relevant part: "The supervisor will continuously evaluate pursuit and will order termination of the pursuit when it appears to constitute an unreasonable risk."

Citing section 15–78–60(4), the Department asserts it is immune from liability for failing to enforce any written

policy, in this case, the Pursuit Policy's guideline that a supervisor monitor all pursuits.

In denying the Department's directed verdict motion at the end of the plaintiff's case, the trial court found the Department was not entitled to absolute immunity under section 15–78–60(4) for the failure to enforce any law or written policy, stating, "I don't think it was a policy violation. I think it was a violation of the standard of care that they are supposed to provide to the public."

We hold the trial court properly refused to grant the Department judgment as a matter of law because the actions of the Department do not fall within the parameters of section 15–78–60(4). As noted by Clark, the Pursuit Policy was merely a statement of generally accepted law enforcement guidelines. This broad provision is not the kind of written policy that should be afforded the protection of absolute immunity under the Tort Claims Act.

*Clark*, 353 S.C. at 307, 578 S.E.2d at 24 (footnotes omitted).

In addition, the Department claimed discretionary immunity under section 15–78–60(5). The court disagreed:

Clark presented the testimony of his expert in high-speed chases, Samuel Killman, that the Department's employees did not properly balance the competing considerations of capturing a fleeing suspect versus maintaining the public's safety and that they disregarded appropriate standards in failing to terminate the pursuit. The Department attempted to rebut this evidence with Bradley's testimony that he did weigh these competing concerns. This created a question of fact that could not be resolved by the trial court. Accordingly, we hold the trial court properly denied the Department's motions for judgment as a matter of law on the ground of discretionary immunity.

Moreover, we question whether the discretionary immunity provision is applicable to this case in any event. Some jurisdictions determine whether an act is discretionary by considering if it can best be described as planning or operational. In this case, we believe the function of the Department's employees in carrying out a general pursuit policy is operational in nature and is not the type of discretionary act contemplated in the Tort Claims Act. The

fact that the employees had to make decisions or exercise some judgment in their activities is not determinative. To read the exception that broadly would encompass virtually all traffic stops made by the Department's employees, as they all involve some degree of decision-making, but they are not the type of discretionary act envisioned under the Tort Claims Act.

*Clark,* 353 S.C. at 305–06, 578 S.E.2d at 23 (footnotes omitted).

*Jackson v. S.C. Dep't of Corrections,* 301 S.C. 125, 390 S.E.2d 467 S.E.2d (Ct.App.1989), *aff'd,* 302 S.C. 519, 397 S.E.2d 377 (1990), was a suit against the Department of Corrections for the wrongful death of inmate Stroman Jackson. Jackson was killed by another inmate, Wilson Atkinson. Atkinson had an extensive history of attacking inmates and officers and had killed an inmate on a prior occasion. A jury returned a verdict for Jackson, but the trial court granted the Department's JNOV. The Department claimed immunity under section 15–78–60(5) for what it claimed was "the exercise of discretion or judgment" in its decision to move Atkinson from a maximum-security facility to the facility where Jackson was killed. We reversed the JNOV and remanded for the entry of the jury's verdict:

> While Atkinson's transfer was admittedly an act requiring the discretion and judgment of the Department, Section 15–78–60(25) provides an exception to immunity where the governmental entity exercises its responsibility or duty in a grossly negligent manner. Section 15–78–60(5) must be read in light of this exception. If discretion is exercised in a grossly negligent manner, the exception to the normal rule of immunity applies.

301 S.C. at 128, 390 S.E.2d at 468.

In *Faile v. S.C. Dep't of Juvenile Justice,* 350 S.C. 315, 566 S.E.2d 536 (2002), after ruling the Department was not immune from liability under section 15–78–60(1), the court turned to the Department's claim of discretionary immunity under section 15–78–60(5). The court concluded DJJ was not entitled to immunity under that provision:

> A governmental entity is not liable for losses resulting from an exercise of discretion by its employees. Section 15–78–60(5) of the South Carolina Tort Claims Act exempts

governmental entities from liability for losses resulting from "the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee." Discretionary immunity is an affirmative defense requiring DJJ to prove Dorsey evaluated competing alternatives and made a "judgment" call based on applicable professional standards. *Foster v. South Carolina Dep't of Highways & Pub. Transp.*, 306 S.C. 519, 413 S.E.2d 31 (1992).

In determining whether Dorsey's action was discretionary, it is helpful to compare the two classifications for the duties of public officials. The duties of public officials are generally classified as either ministerial or discretionary. *Jensen v. Anderson County Dep't of Soc. Servs.*, 304 S.C. 195, 403 S.E.2d 615 (1991). "The duty is ministerial when it is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts." *Id.* at 203, 403 S.E.2d at 619. The duty is discretionary if the governmental entity proves it actually weighed competing considerations, faced with alternatives, and made a conscious decision based upon those considerations. *Id.* (citing *Niver v. Dep't Highways & Pub. Transp.*, 302 S.C. 461, 395 S.E.2d 728 (Ct.App.1990)).

In *Jensen*, this Court affirmed the Court of Appeals' finding that insufficient evidence was submitted to determine whether the Department of Social Services ("DSS") made a discretionary decision. *Id.* In the case, a teacher reported a potential child abuse case to DSS. A DSS social worker interviewed the child, and noted the presence of bruises and the child's fear of the mother's boyfriend. However, the social worker failed to follow up on the interview and eventually closed the file. One month later, the child's brother was beaten to death in the home. The Court held that DSS had a duty to conduct a thorough investigation before deciding to close the file. The Court concluded that conducting the investigation was ministerial but closing the file was discretionary because it required applying facts discovered through investigation to reach a decision. *Id.* Despite the fact that closing the file is discretionary, the Court held that there was insufficient evidence

to grant discretionary immunity, because the decision was due to failure to complete the investigation, an administrative function, rather than a weighing of competing considerations. *Id.*

In the present case, DJJ claims Dorsey's decision to place Fredrico in his home after he was expelled from his foster home was a discretionary decision. Respondents claim Dorsey placed Fredrico in his family home because he thought no one else would take him. However, Respondents argue there was alternative placement available in the Greenville Group Home, which had agreed earlier to take Fredrico in an emergency. Therefore, Respondents claim if Dorsey had weighed competing alternatives, he would have placed Fredrico in the Greenville Group home. Based on our holding in *Jensen* and the evidence before us, DJJ is not entitled to discretionary immunity.

In addition, even if we held Dorsey exercised discretion, the performance of discretionary duties does not give rise to immunity if the public official acted in a grossly negligent manner. *See Jackson v. South Carolina Dep't of Corr.*, 301 S.C. 125, 390 S.E.2d 467 (Ct.App.1989) *aff'd*, 302 S.C. 519, 397 S.E.2d 377 (1990). "Gross negligence is the intentional, conscious failure to do something which is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Richardson v. Hambright*, 296 S.C. 504, 506, 374 S.E.2d 296, 298 (1988). It is the failure to exercise even the slightest care. *Hollins v. Richland County Sch. Dist. One*, 310 S.C. 486, 427 S.E.2d 654 (1993). This Court has also defined it as a relative term that "means the absence of care that is necessary under the circumstances." *Hicks v. McCandlish*, 221 S.C. 410, 415, 70 S.E.2d 629, 631 (1952).

Gross negligence is ordinarily a mixed question of law and fact. *See Clyburn v. Sumter County School District # 17*, 317 S.C. 50, 451 S.E.2d 885 (1994). When the evidence supports but one reasonable inference, it is solely a question of law for the court, otherwise it is an issue best resolved by the jury. *Id.* In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury.

In *Jackson, supra*, a jury found the Department of Corrections grossly negligent for placing a prisoner with strong

violent tendencies into a minimum security prison, where he killed a fellow inmate. The Court of Appeals found the Department of Corrections transferred the inmate even though they knew he had multiple disciplinary violations, including the killing of a fellow inmate. The Court of Appeals held the jury could view the transfer as gross negligence since it demonstrated a "conscious indifference to the threat posed to the safety of other inmates." *Jackson*, 301 S.C. at 125, 390 S.E.2d at 468.

In the instant case, Dorsey placed Fredrico into a home where DJJ workers noted there was no proper supervision. Furthermore, Dorsey knew of Fredrico's violent tendencies. He even wrote before the incident that he "wouldn't give (Fredrico) two weeks with his mother before he would get into big trouble."

Based on the facts before us, DJJ is not entitled to discretionary immunity as a matter of law. At a minimum, Faile has presented enough evidence to overcome DJJ's summary judgment motion on the matter.

*Faile,* 350 S.C. at 330–32, 566 S.E.2d at 544–45.

## B. Denial of Motion In Limine and Request to Charge

 "When instructing the jury, the trial court is required to charge only the current and correct law of South Carolina." *Cohens v. Atkins,* 333 S.C. 345, 349, 509 S.E.2d 286, 289 (Ct.App.1998). "The substance of the law is what must be instructed to the jury, not any particular verbiage.... A jury charge which is substantially correct and covers the law does not require reversal." *Burroughs v. Worsham,* 352 S.C. 382, 391, 574 S.E.2d 215, 220 (Ct.App. 2002). When reviewing a jury charge for alleged error, the appellate court must consider the charge as a whole in light of the evidence and issues presented at trial. *Daves v. Cleary,* 355 S.C. 216, 224, 584 S.E.2d 423, 427 (Ct.App.2003). If the charge is reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *Id.* "To warrant reversal for refusal to give a requested instruction, the refusal must have not only been erroneous, but prejudicial as well." *Cohens,* 333 S.C. at 349, 509 S.E.2d at 289; *see also Daves,* 355 S.C. at 224, 584 S.E.2d at 427 (stating a circuit court's refusal to give a properly requested charge is

reversible error only when the requesting party can demonstrate prejudice from the refusal).

When a governmental entity asserts multiple exceptions to the waiver of immunity and at least one of the exceptions contains a gross negligent standard, we must interpolate the gross negligence standard into the other exceptions. In *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 520 S.E.2d 142 (1999), our supreme court explained:

> This Court and the Court of Appeals previously have recognized that the correct approach, when a governmental entity asserts various exceptions to the waiver of immunity, is to read exceptions that do not contain the gross negligence standard in light of exceptions that do contain the standard. *Duncan v. Hampton County School Dist. # 2*, 335 S.C. 535, 517 S.E.2d 449 (1999) (reading discretionary immunity exception in light of exception to immunity in which governmental entity exercises its duty in a grossly negligent manner, such that discretionary immunity will not protect the government if it exercises that discretion in a grossly negligent manner); *Etheredge v. Richland School Dist. I*, 330 S.C. 447, 463, 499 S.E.2d 238, 246 (Ct.App.1998) (when an action is brought alleging gross negligence by a governmental entity pursuant to an exception contained in Section 15–78–60, all other applicable exceptions must be read in light of the exception containing the gross negligence standard), *cert. granted on other grounds*, April 8, 1999. The principles expressed in *Duncan* and *Etheredge* are drawn from *Jackson v. South Carolina Dep't of Corrections*, 301 S.C. 125, 390 S.E.2d 467 (Ct.App.1989), *aff'd*, 302 S.C. 519, 397 S.E.2d 377 (1990).
>
> While provisions establishing limitations upon and exemptions from liability of a governmental entity must be liberally construed to limit liability, we also must presume in construing a statute that the Legislature did not intend to perform a futile thing. *See Gaffney v. Mallory*, 186 S.C. 337, 195 S.E. 840 (1938). We are constrained to avoid a construction that would read a provision out of a statute, and must reconcile conflicts if possible. *Ballard v. Ballard*, 314 S.C. 40, 443 S.E.2d 802 (1994).

*Steinke,* 336 S.C. at 395–96, 520 S.E.2d at 153–54. Accordingly, the *Steinke* court held:

> [T]he inspection powers exception must be read in conjunction with the key exception at issue in this case, Section 15–78–60(12), the licensing powers exception. Department must inspect an amusement device before deciding whether to issue, suspend, or revoke a license. S.C.Code Ann. §§ 41–18–70 and 41–18–80. Department also has an implicit duty to investigate potentially hazardous substantial modifications when it learns of them. It would make no sense to say Department may be found grossly negligent in a licensing decision, yet allow Department to escape liability because the inspection powers exception does not contain a gross negligence standard. The logical way to read these closely related provisions when both are at issue is that a governmental entity may be liable if it is grossly negligent in licensing or inspecting a particular device or activity.

*Id.* at 395–96, 520 S.E.2d at 153–54.

Therefore, because Proctor proceeded under a theory of gross negligence as provided in section 15–78–60(12), the other subsections of that statute do not provide immunity from DHEC's acts of gross negligence. Accordingly, the trial court did not err in denying DHEC's motion in limine, motion for a directed verdict, or in its jury charge.

### III. Evidence of Events Prior to 2000

DHEC contends the trial court erred in allowing evidence of events and damages prior to the Board's 2000 order, because this evidence was barred by the statute of limitations. We disagree.

The admission of evidence is within the trial court's discretion. *Seabrook Island Prop. Owners' Ass'n v. Berger,* 365 S.C. 234, 241, 616 S.E.2d 431, 435 (Ct.App.2005) (citing *Gamble v. Int'l Paper Realty Corp. of South Carolina,* 323 S.C. 367, 373, 474 S.E.2d 438, 441 (1996); *Hofer v. St. Clair,* 298 S.C. 503, 513, 381 S.E.2d 736, 742 (1989)); *Floyd v. Floyd,* 365 S.C. 56, 81–82, 615 S.E.2d 465, 479 (Ct.App.2005); *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.,* 343 S.C. 424, 439, 540 S.E.2d 113, 121 (Ct.App.2000) (citing *Washington v. Whitaker,* 317 S.C. 108, 451 S.E.2d 894 (1994));

*Haselden v. Davis,* 341 S.C. 486, 534 S.E.2d 295 (Ct.App.2000), *aff'd,* 353 S.C. 481, 579 S.E.2d 293 (2003); *Cudd v. John Hancock Mut. Life Ins. Co.,* 279 S.C. 623, 310 S.E.2d 830 (Ct.App.1983). The court's ruling to admit or exclude evidence will only be reversed if it constitutes an abuse of discretion amounting to an error of law. *Elledge v. Richland/Lexington Sch. Dist. Five,* 352 S.C. 179, 185, 573 S.E.2d 789, 792 (2002); *R & G Construction,* 343 S.C. at 439, 540 S.E.2d at 121; *see also Whaley v. CSX Transp., Inc.,* 362 S.C. 456, 483, 609 S.E.2d 286, 300 (2005) (observing admission of evidence will not be reversed absent an abuse of discretion); *Gamble,* 323 S.C. at 373, 474 S.E.2d at 441 (noting admission or exclusion of evidence will not be disturbed on appeal absent clear abuse). The trial court's decision will not be reversed on appeal unless it appears the trial court clearly abused its discretion and the objecting party was prejudiced by the decision. *S.C. Prop. & Cas. Guar. Ass'n v. Yensen,* 345 S.C. 512, 524, 548 S.E.2d 880, 886 (Ct.App.2001); *Sullivan v. Davis,* 317 S.C. 462, 465, 454 S.E.2d 907, 909 (Ct.App.1995); *Cudd,* 279 S.C. at 629, 310 S.E.2d at 833; *see also Stevens v. Allen,* 336 S.C. 439, 448, 520 S.E.2d 625, 629 (Ct.App.1999) ("For this Court to reverse a case based on the admission of evidence, both error and prejudice must be shown."), *aff'd,* 342 S.C. 47, 536 S.E.2d 663. "The trial judge has wide discretion in determining the relevancy of evidence, and his decision to admit or reject evidence will not be reversed on appeal absent an abuse of that discretion." *Moore v. Moore,* 360 S.C. 241, 258, 599 S.E.2d 467, 476 (Ct.App.2004); *accord Hoeffner v. The Citadel,* 311 S.C. 361, 365, 429 S.E.2d 190, 192 (1993); *Davis v. Traylor,* 340 S.C. 150, 155, 530 S.E.2d 385, 387 (Ct.App.2000); *Hawkins v. Pathology Assocs. of Greenville, P.A.,* 330 S.C. 92, 108, 498 S.E.2d 395, 404 (Ct.App.1998).

All that is required for evidence to be relevant is that it have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE; *see Hoeffner,* 311 S.C. at 365, 429 S.E.2d at 192; *Davis,* 340 S.C. at 155, 530 S.E.2d at 387; *Gulledge v. McLaughlin,* 328 S.C. 504, 510, 492 S.E.2d 816, 819 (Ct.App. 1997). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the

Constitution of the State of South Carolina, statutes, these rules, or by other rules promulgated by the Supreme Court of South Carolina. Evidence which is not relevant is not admissible." Rule 402, SCRE; *see Pike v. South Carolina Dep't of Transp.*, 332 S.C. 605, 613, 506 S.E.2d 516, 520 (Ct.App.1998), *aff'd as modified,* 343 S.C. 224, 540 S.E.2d 87 (2000). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE; *In re Robert R.*, 340 S.C. 242, 246–47, 531 S.E.2d 301, 303 (Ct.App. 2000); *Haselden,* 341 S.C. at 497 n. 12, 534 S.E.2d at 301 n. 12; *Hunter v. Staples,* 335 S.C. 93, 101–02, 515 S.E.2d 261, 266 (Ct.App.1999); *see Watson ex rel Watson v. Chapman,* 343 S.C. 471, 478, 540 S.E.2d 484, 487 (Ct.App.2000) ("The dictates of Rule 401 are subject to the balancing requirement of Rule 403, SCRE, which requires a court to exclude relevant evidence upon a showing that its admission would be more prejudicial than probative.").

 The evidence at issue here was necessary as a means of introducing the jury to the background events leading up to the period of time from 2000 through the date of the trial. For example, an e-mail referenced by Proctor served to show that DHEC officials were in a position to interact directly with retail sellers and would have knowledge of the rebate list's impact on a facility's business. Moreover, the facts surrounding this e-mail and any other acts prior to 2000 were excluded from consideration by the jury for damages. The trial court specifically charged that "[t]he period here for which you are concerned with is that period commencing with July the 27th, 2000." The information relating to what happened prior to the issues in this case was relevant to the questions to be decided at trial. Furthermore, the trial court properly charged the jury that they should consider only those acts occurring after July 27th, 2000. Accordingly, we find no error.

## IV. Lost Profits/Damages

DHEC asserts three issues dealing with lost profits and damages: (1) that the court erred in denying DHEC's direct-

ed verdict motion as to damages and in charging the jury as to lost profits; (2) that the court erred in refusing DHEC's request for a jury instruction limiting Proctor's damages to $9,500; and (3) that the damages were so excessive as to require a new trial absolute, or a new trial *nisi remittitur*.

## A. Reasonable Certainty Standard

■ DHEC did not request the trial court to submit a special verdict form to determine whether the actual damages were for lost profits, loss of goodwill, or some other measure. Without a special verdict form, it would be speculative for this Court to determine what portion of the award the jury attributed to lost profits as opposed to other tort damages. *See Moore v. Moore*, 360 S.C. 241, 251, 599 S.E.2d 467, 472 (Ct.App.2004). Even so, the law does not require absolute certainty of data upon which lost profits are to be determined, but requires such reasonable certainty that damages are not based upon speculation and conjecture. It is sufficient if there is a certain standard or fixed method by which profits may be estimated and determined with a fair degree of accuracy. *Beck v. Clarkson*, 300 S.C. 293, 298–99, 387 S.E.2d 681, 684 (Ct.App.1989) (quoting *South Carolina Fin. Corp. of Anderson v. West Side Fin. Co.*, 236 S.C. 109, 113 S.E.2d 329 (1960)).

" 'Profits' have been defined as the 'net pecuniary gain from a transaction, the gross pecuniary gains diminished by the cost of obtaining them.' " *Moore*, 360 S.C. at 253, 599 S.E.2d at 473 (quoting Restatement of Contracts § 331, Comment B (1932)); *see also Mali v. Odom*, 295 S.C. 78, 367 S.E.2d 166 (Ct.App.1988) (defining profits as the net of income over expenditures during a given period).

*Drews Co., Inc. v. Ledwith–Wolfe Assocs., Inc.*, 296 S.C. 207, 371 S.E.2d 532 (1988), offers an erudite and comprehensive analysis of the standards governing recovery of lost profits:

The crucial requirement in lost profits determinations is that they be "established with reasonable certainty, for recovery cannot be had for profits that are conjectural or speculative." *South Carolina Finance Corp., supra,* at 122, 113 S.E.2d at 336. "The proof must pass the realm of conjecture, speculation, or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the

loss can be logically and rationally drawn." 22 Am.Jur.2d *Damages* § 641 (1988).

Numerous proof techniques have been discussed and accepted in different factual scenarios. *See, e.g., Upjohn v. Rachelle Laboratories, Inc.*, 661 F.2d 1105, 1114 (6th Cir. 1981) (proof of future lost profits based on marketing forecasts by employees specializing in economic forecasting); *Petty v. Weyerhaeuser Co., supra* (skating rink's projected revenues compared to those of another arena in a nearby town); *see also Restatement (Second) of Contracts* § 352, at 146 (1981) (proof of lost profits "may be established with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like."); Note, *supra*, 48 Ohio St. L.J. at 872–3 (means of proving prospective profits include (1) "yardstick" method of comparison with profit performance of business similar in size, nature, and location; (2) comparison with profit history of plaintiff's successor, where applicable; (3) comparison of similar businesses owned by plaintiff himself, and (4) use of economic and financial data and expert testimony).

*Drews Co.*, 296 S.C. at 213–14, 371 S.E.2d at 535–36. The *Drews Co.* case dealt specifically with lost profits in the context of a new business. The court explained: "While the factual contexts in which new business/lost profits cases arise will undoubtedly vary, these methods of proof and the 'reasonable certainty' requirement bear an inherent flexibility facilitating the just assessment of profits lost to a new business due to contractual breach." *Id.* at 214, 371 S.E.2d at 536. Although the instant case does not involve lost profits of a new business, the court's comment that the reasonable certainty requirement bears an inherent flexibility facilitating the just assessment of lost profits holds true here as well.

 In *Whisenant v. James Island Corp.*, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981), our supreme court observed:

Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy. While neither the existence, causation nor amount of damages can be left to conjecture, guess or speculation, proof with mathematical certainty of the

amount of loss or damage is not required. *Piggy Park Enterprises, Inc. v. Schofield*, 251 S.C. 385, 162 S.E.2d 705 (1968); *Gray v. Southern Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971).

*Accord Armstrong v. Collins*, 366 S.C. 204, 621 S.E.2d 368 (Ct.App.2005); *Collins Entm't, Inc. v. White*, 363 S.C. 546, 611 S.E.2d 262 (Ct.App.2005); *see also Sterling Dev. Co. v. Collins*, 309 S.C. 237, 242, 421 S.E.2d 402, 405 (1992) ("In claiming lost profits, the degree of proof required is that of reasonable certainty.... The proof must pass the realm of conjecture, speculation or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of the loss can be logically and rationally drawn.") (citations omitted). In *Piggy Park Enterprises, Inc. v. Schofield*, 251 S.C. 385, 162 S.E.2d 705 (1968), the supreme court inculcated:

It is, of course, true that the existence or amount of damages cannot be left to conjecture, guess or speculation.

'As a general rule, the evidence should be such as to enable the court or jury to determine * * * the amount of damages with reasonable certainty or accuracy; and it is sufficient if they are so established.

'Proof of the amount of loss with absolute or mathematical certainty is not required, and it does not matter that the determination of damages depends to some extent on the consideration of contingent events. So, it had been held sufficient if a reasonable basis of computation is afforded, even though the result may be only approximate, or to adduce evidence which is the best the case is susceptible of under the circumstances and which will permit a reasonably close estimate of the loss.' 25A C.J.S. Damages § 162(2), p. 80. *Cf. Powers v. Calvert Fire Ins. Co.*, 216 S.C. 309, 57 S.E.2d 638, 16 A.L.R.2d 1261; *S.C. Electric & Gas Co. v. Aetna Ins. Co.*, 233 S.C. 557, 106 S.E.2d 276.

*Piggy Park Enterprises*, 251 S.C. at 391–92, 162 S.E.2d at 708. "The problematic nature of proving damages for loss of profits in a tort action will not prevent recovery where ... the plaintiff can present evidence from which the court can make 'fair and reasonable approximation of them.'" *Petty v. Wey-*

*erhaeuser Co.,* 288 S.C. 349, 355–56, 342 S.E.2d 611, 615–16 (Ct.App.1986) (citations omitted).

## 1. Directed Verdict

■■■ DHEC contends the trial court should have directed a verdict in its favor for failure to prove damages. At the close of trial, DHEC moved for a directed verdict on damages, arguing:

> And also the third ground for my motion for directed verdict is the failure to prove his damages in this case by evidence that the jury can look at and not engage in speculation or conjecture, and there's been no proper proof of damages in this case.

In its brief, DHEC reiterates, "Proctor failed to introduce any evidence that a jury could use to determine an amount of damages." We disagree.

In this case, the evidence advanced at trial supports the jury's award of damages. The evidence showed there are three million tires discarded in South Carolina each year and there are fewer than ten waste tire facilities in the State. Because Proctor was not on the rebate list, he was unable to sustain contracts with his major customers and lost the dollar he would have received for every tire he took into the facility. Proctor's customers disposed of over 15,000 tires per quarter, each of which was subject to the one-dollar rebate. Moreover, Proctor testified that "thirty-three to forty percent of the tires we got [from Sam's Club] we could sell them and make a profit[.]" Thus, from 2000 until the time Proctor was returned to the list, he lost the rebate for each tire he would have received from Sam's Club, plus lost profits from thirty-three to forty percent of the tires he would have sold as used tires. Further, Proctor sold chips from tires for playgrounds, carpet backing, and septic systems.

Proctor demonstrated that between 2000 and 2001, his company paid approximately $9,500 to take tires to another processing facility after he was removed from the rebate list. Proctor presented evidence of the number of tires his business processed per year from 1995 through 2004, which included 30,000 tires in 1995, and 60,000 tires in 1996. Proctor asseverated that as a result of DHEC's actions, Anderson Tire

Recycling's business reputation had been damaged and had not yet recovered.

We find sufficient evidence of damages to support the trial judge's submitting this case to the jury. *See S.C. Prop. & Guar. Ass'n v. Yensen*, 345 S.C. 512, 521, 548 S.E.2d 880, 884–85 (Ct.App.2001) (noting on appeal from the denial of a motion for a directed verdict, the appellate court may only reverse if there is no evidence to support the trial court's ruling).

## 2. Jury Instructions

Similarly, we reject DHEC's argument that the court erred by not charging the jury that Proctor's damages, if any, were limited to $9,500. "When instructing the jury, the trial court is required to charge only the current and correct law of South Carolina." *Cohens v. Atkins*, 333 S.C. 345, 349, 509 S.E.2d 286, 289 (Ct.App.1999). In reviewing a jury charge for alleged error, the appellate court must consider the charge as a whole in light of the evidence and issues presented at trial. *Daves v. Cleary*, 355 S.C. 216, 224, 584 S.E.2d 423, 427 (Ct.App.2003). If the charge is reasonably free from error, isolated portions which might be misleading do not constitute reversible error. *Id.* "To warrant reversal for refusal to give a requested instruction, the refusal must have not only been erroneous, but prejudicial as well." *Cohens*, 333 S.C. at 349, 509 S.E.2d at 289. Proctor proffered evidence of damages beyond the $9,500 he paid to another facility to take tires. Therefore, the trial judge did not err by rejecting DHEC's request to charge.

## B. Excessive Damages—New Trial Absolute/New Trial *Nisi Remittitur*

Finally, DHEC contends the amount of damages found by the jury was so unduly liberal or grossly excessive as to require a new trial *nisi remittitur* or a new trial absolute. We disagree.

"A new trial *nisi* is one in which a new trial will be granted unless the party opposing it complies with a condition set by the court." *Waring v. Johnson*, 341 S.C. 248, 257, 533 S.E.2d 906, 911 (Ct.App.2000) (citing *Elliott v. Black River Elec. Coop.*, 233 S.C. 233, 104 S.E.2d 357 (1958)). The grant

or denial of new trial motions rests within the discretion of the trial judge, and his decision will not be disturbed on appeal unless his findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law. *Chapman v. Upstate RV & Marine,* 364 S.C. 82, 88–89, 610 S.E.2d 852, 856 (Ct.App.2005); *Waring,* 341 S.C. at 256, 533 S.E.2d at 910; *Vinson v. Hartley,* 324 S.C. 389, 405, 477 S.E.2d 715, 723 (Ct.App.1996). The trial court alone has the power to grant a new trial *nisi* when he finds the amount of the verdict to be merely inadequate or excessive. *Chapman,* 364 S.C. at 89, 610 S.E.2d at 856 (citing *McCourt v. Abernathy,* 318 S.C. 301, 457 S.E.2d 603 (1995)); *see also Evans v. Taylor Made Sandwich Co.,* 337 S.C. 95, 99, 522 S.E.2d 350, 352 (Ct.App. 1999) (noting that when the jury's verdict is inadequate or excessive, the trial judge has the discretionary power to grant a new trial *nisi* ); *Hawkins v. Greenwood Development Corp.,* 328 S.C. 585, 493 S.E.2d 875 (Ct.App.1997) (same). However, compelling reasons must be given to justify invading the jury's province by granting a new trial *nisi remittitur. Cf. Pelican Bldg. Ctrs. v. Dutton,* 311 S.C. 56, 61, 427 S.E.2d 673, 676 (1993). The consideration for a motion for a new trial *nisi remittitur* requires the trial judge to consider the adequacy of the verdict in light of the evidence presented. *Cf. Vinson,* 324 S.C. at 405, 477 S.E.2d at 723. Great deference is given to the trial judge "who heard the evidence and is more familiar with the evidentiary atmosphere at trial," and who thus "possesses a better-informed view of the damages than this Court." *Id.* at 405–06, 477 S.E.2d at 723 (citing *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993)); *accord Waring,* 341 S.C. at 257, 533 S.E.2d at 911.

"When considering a motion for a new trial based on the inadequacy or excessiveness of the jury's verdict, the trial court must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Elam v. S.C. Dep't of Transp.,* 361 S.C. 9, 27, 602 S.E.2d 772, 781 (2004); *accord Evans,* 337 S.C. at 99–100, 522 S.E.2d at 352. "If the amount of the verdict is **grossly** inadequate or excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial judge must grant a new trial absolute." *Harrison v. Bevilacqua,* 354 S.C. 129, 140, 580

S.E.2d 109, 115 (2003) (internal quotation marks omitted) (quoting *O'Neal v. Bowles,* 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993)).

 "The decision to grant or deny a new trial absolute based on the excessiveness of a verdict rests in the sound discretion of the trial court and will not ordinarily be disturbed on appeal." *Elam,* 361 S.C. at 27, 602 S.E.2d at 781; *see Crawford v. Charleston–Isle of Palms Traction Co.,* 126 S.C. 447, 120 S.E. 381 (1923) (observing the refusal to grant a new trial on the ground that the verdict was excessive was addressed to the sound discretion of the trial judge). "In deciding whether to assess error when a new trial motion is denied, the appellate court must consider the testimony and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Becker v. Wal–Mart Stores, Inc.,* 339 S.C. 629, 635–36, 529 S.E.2d 758, 761–62 (Ct.App.2000) (footnote omitted). "The jury's determination of damages, however, is entitled to substantial deference." *Harrison,* 354 S.C. at 140, 580 S.E.2d at 115.

 As stated by the *Vinson* court:

A trial court may grant a new trial absolute on the ground that the verdict is excessive or inadequate. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993). The jury's determination of damages, however, is entitled to substantial deference. *Id.* The trial judge must grant a new trial absolute if the amount of the verdict is grossly inadequate or excessive so as to shock the conscience of the court and clearly indicates the figure reached was the result of passion, caprice, prejudice, partiality, corruption or some other improper motives. *See Cock—NBull Steak House, Inc. v. Generali Ins. Co.,* 321 S.C. 1, 466 S.E.2d 727 (1996); *McCourt by and Through McCourt v. Abernathy,* 318 S.C. 301, 457 S.E.2d 603 (1995); *Allstate Ins. Co. v. Durham,* 314 S.C. 529, 431 S.E.2d 557 (1993); *O'Neal v. Bowles,* 314 S.C. 525, 431 S.E.2d 555 (1993); *Rush, supra.* The failure of the trial judge to grant a new trial absolute in this situation amounts to an abuse of discretion and on appeal this Court will grant a new trial absolute. *Weir v. Citicorp Nat'l Servs., Inc.,* 312 S.C. 511, 435 S.E.2d 864 (1993); *Allstate, supra; O'Neal, supra.*

The grant or denial of new trial motions rests within the discretion of the trial judge and his decision will not be disturbed on appeal unless his findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law. *Umhoefer v. Bollinger,* 298 S.C. 221, 379 S.E.2d 296 (Ct.App.1989). *See also Boozer v. Boozer,* 300 S.C. 282, 387 S.E.2d 674 (Ct.App.1988) (Court of Appeals has no power to review trial court's ruling unless it rests on basis of fact wholly unsupported by evidence or is controlled by error of law). In deciding whether to assess error to a court's denial of a motion for a new trial, we must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Umhoefer, supra.*

*Vinson,* 324 S.C. at 404–05, 477 S.E.2d at 723; *see also Welch v. Epstein,* 342 S.C. 279, 302, 536 S.E.2d 408, 420 (Ct.App. 2000) ("[T]o warrant a new trial absolute, the verdict reached must be so 'grossly excessive' as to clearly indicate the influence of an improper motive on the jury."). If the verdict is grossly inadequate or excessive, such that it is the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial court must grant a new trial absolute. *O'Neal v. Bowles,* 314 S.C. 525, 527, 431 S.E.2d 555, 556 (1993); *Waring v. Johnson,* 341 S.C. 248, 257, 533 S.E.2d 906, 911 (Ct.App.2000).

The decision to grant a new trial *nisi remittitur* is left to the sound discretion of the trial judge. This record contains sufficient evidence to support his ruling. Because the evidence supports the jury's verdict, we disagree that the damages are grossly excessive so as to suggest the jury was motivated by passion, caprice, or prejudice. The trial court did not abuse its discretion in denying DHEC's motions for a new trial *nisi remittitur* and a new trial absolute.

## CONCLUSION

Based upon the foregoing, the trial court's order is

**AFFIRMED.**

HEARN, C.J., and KITTREDGE, J., concur.